In re PLANKINTON BANK: Petition of VAN DYKE.

*March 16 — April 10, 1894.*

*Banks and banking: Deposit of trust funds by president to his private account: Notice: Voluntary assignment.*

1. A bank is not chargeable with knowledge of the ownership of moneys collected by its president in his private loan business and deposited by him in the bank, through its tellers, to his private account, even though it had notice that he conducted said loan business, collected money for others, deposited only in said bank, and kept no separate account.

2. Moneys so collected and deposited by the president to his private account having been all drawn out, and his account overdrawn, before an assignment by the bank, and no part of such moneys being traceable to any property which came to the hands of the assignee, the person for whom they were collected has no claim against the assets of the bank in the hands of said assignee.

APPEAL from the Circuit Court for *Milwaukee* County.

The petitioner, *John H. Van Dyke*, sought to have the sum of $15,871.50, collected and held in trust by Frederick Day for him, and by him deposited in the Plankinton Bank, with interest, ordered and adjudged to be paid to the petitioner by *William Plankinton*, the assignee, out of the

assets of the Plankinton Bank in his hands as such assignee, in preference to all other creditors of the bank, or, if not so paid, then, as a general creditor of said bank, equally with its other creditors, etc. The case was heard upon stipulated facts, in substance as follows:

Said Day, when the transactions in question occurred, was engaged in the business of investing and loaning money upon bond or note and mortgage upon real estate for his clients or customers in that business. Prior to February 1, 1893, the petitioner had intrusted Day with large sums to be so loaned, and he was to retain the securities taken, collect the interest thereon as the same matured, and promptly pay the same to the petitioner, and in like manner collect and pay over the principal, unless directed to reinvest the same, and Day was to have a commission of two per cent. on the amount of interest collected and paid over. Between March 1, 1893, and May 16th, in the same year, Day collected on account of petitioner's loans, at various times, in all to the amount of $15,871.50, all of which, when and as collected, Day deposited in the Plankinton Bank to the credit of his individual account, at all of which times Day was largely indebted to the bank, and all the time he was one of the directors and president and managing officer of the bank. The deposits were made by Day in person or by his servants in the usual manner through the tellers of the bank and without the intervention of any officer of the bank.

Exhibit A, annexed to the statement, is a copy of Day's deposit accounts,— one a general account, headed "F. T. Day,".which was terminated April 4, 1893, and no money thereafter deposited to the credit of that account, and no checks were thereafter drawn against it, but all moneys thereafter charged against it were for checks previously drawn and subsequently presented. April 5, 1893, a new account was opened, called "F. T. Day, Special," to which

all moneys subsequently deposited were credited, and all checks thereafter drawn were charged.    All checks drawn by Day before June 1, 1893, were paid and charged up as aforesaid, and this exhibit shows the daily balance of said accounts and overdrafts on the days mentioned.    The items marked "Discount" were the discount of the individual notes of said Day,— namely, March 23d, $25,000, and March 31st, $40,000; and it appears that Day's general account was overdrawn March 1, 1893, $50,216.69, and continued to be largely overdrawn on every day except April 4th, and in the end, May 31st, it was overdrawn, notwithstanding said discounts, in the sum of $23,798.53.    The account of "F. T. Day, Special," was overdrawn May 15, 1893, after he had deposited the last moneys collected for petitioner, in the sum of $11,506.67, and continued largely overdrawn to the end, and the amount of his said overdrafts when the bank assigned was over $30,000.

The bank had no notice that any of the moneys deposited by Day with it were the moneys of the petitioner, except such notice, if any, as it is chargeable with in law through said Day, or from the fact that said bank had notice that said Day conducted said loan business, collected money for others, deposited only in said bank, and kept no separate account.

About March 1, 1893, the petitioner, being dissatisfied with Day's management of his business, directed him to make no further investments for him, but to pay all moneys collected by him on such loans to the petitioner immediately, except as otherwise specially directed by him. They then entered into another agreement in respect to such loans as were then in default (made an exhibit to the statement).   The petitioner had no knowledge of the amounts actually collected or received by Day between March 1, 1893, and the date of the assignment, or any of them, and had no notice or knowledge that they had been

In re Plankinton Bank: Petition of Van Dyke.

deposited by Day to his individual account in said bank, and never assented thereto. The business relations between him and Day, as first above stated, had existed for a number of years prior to February 1, 1893, during which time moneys collected by Day for him were habitually deposited by Day in said Plankinton Bank to his own credit, in like manner as after said date. The petitioner had no knowledge of the manner in which Day kept his bank account, aside from the fact that Day made payments to him from time to time, and always by means of the individual checks of Day upon said bank, and they were in the usual form, headed "Real-Estate Loan Office of F. T. Day," and were directed at the bottom, "To the Plankinton Bank, Milwaukee, Wis." The petitioner never had any knowledge that the account or accounts of Day at said bank were overdrawn. Between the 5th day of April, 1893, and May 31st of the same year, Day drew checks on said bank in favor of his individual creditors, which were paid and charged to the "Special" account, and some of them were in favor of parties having liens or claims on real estate and other property which was conveyed by Day to said bank as collateral security for his indebtedness to said bank.

The assignment of the bank to *William Plankinton* for the benefit of its creditors was made June 1, 1893, and he holds possession of the estate and assets of said bank as its assignee; and on the 3d of June Day made a like assignment for the benefit of his creditors to William H. Momsen, who is still such assignee. The court made an order denying the prayer of the petition, from which the petitioner appealed.

For the appellant there was a brief by *Van Dyke & Van Dyke*, and oral argument by *G. D. Van Dyke*. They contended, *inter alia*, that the bank was chargeable with notice that the money was held by Day in a fiduciary capacity and by him fraudulently applied in payment of his individ-

ual indebtedness to the bank. *Mihills Mfg. Co. v. Camp*, 49
Wis. 130, 148–150; *Fishkill Sav. Inst. v. Bostwick*, 19 Hun,
354; *Holden v. N. Y. & E. Bank*, 72 N. Y. 286; *Atlantic
C. Mills v. Indian O. Mills*, 147 Mass. 268; *Loring v. Bro-
die*, 134 id. 453; *First Nat. Bank of New Milford v. New
Milford*, 36 Conn. 93.

For the respondent there was a brief by *Winkler, Flan-
ders, Smith, Bottum & Vilas*, and oral argument by *E. P.
Vilas*. To the point that where a director or other officer
enters into contract relations with a corporation involving
his private interests, he *pro hac vice* ceases to be an agent
of the corporation and the latter is not chargeable with his
knowledge, they cited, besides cases cited in the opinion,
*Commercial Bank v. Cunningham*, 24 Pick. 270; *Winchester
v. Baltimore & S. R. Co.* 4 Md. 231; *First Nat. Bank v.
Gifford*, 47 Iowa, 575; *Wickersham v. Chicago Z. Co.* 18
Kan. 481; *Platt v. Birmingham A. Co.* 41 Conn. 255; *U. S.
Ins. Co. v. Shriver*, 3 Md. Ch. 381; *Stratton v. Allen*, 16
N. J. Eq. 229; *First Nat. Bank v. Christopher*, 40 N. J.
Law, 435; *Third Nat. Bank v. Harrison*, 10 Fed. Rep. 243;
*Stevenson v. Bay City*, 26 Mich. 44.

PINNEY, J. 1. It is perfectly well settled that the mere
fact that an officer of a corporation acquires knowledge of
facts when not acting for it does not charge or affect the
corporation with knowledge of those facts in any transac-
tion between such officer and the corporation in respect to
which he acts solely for and represents his own interests.
Where an officer or agent of the corporation himself deals
with the corporation, it will not be charged with notice of
the information which he possesses relating to the transac-
tion, and which he does not disclose; for the reason that in
such case he does not represent the corporation, but is act-
ing for himself, and ceases, *pro hac vice*, to act as an agent
of the corporation. The corporation, in such case, is in

reality the adverse party, and the officer does not act for it as its agent at all. Mechem, Ag. § 729; Morse, Banks, 125; *Manufacturers' Nat. Bank v. Newell*, 71 Wis. 314; *Bank of U. S. v. Davis*, 2 Hill, 451; *Cragie v. Hadley*, 99 N. Y. 131; *Seneca Co. Bank v. Neass*, 5 Denio, 329, 337; *Innerarity v. Merchants' Nat. Bank*, 139 Mass. 332; *Barnes v. Trenton G. L. Co.* 27 N. J. Eq. 33. When, therefore, Day deposited, either by himself or by his clerks and servants, moneys collected by him in his private loan business to his private account (the tellers of the bank acting for it as its agents in receiving it), the bank was not affected or charged with knowledge that Day possessed as to the ownership of the money, and that he might not deposit it to his private account and use it as his own. In these transactions Day did no act whatever on the part of the bank, and he did not participate in its behalf, so far as the case shows, in them in any manner whatever. The sole representatives of the bank were its tellers, and they were the proper and competent representatives in that behalf of the bank. It was not essential that the president or cashier should have been present at the time the deposits were made. The tellers were not only innocent of any wrong, but of any knowledge of such, and the knowledge that Day had while engaged in wrongfully converting the funds in question cannot, for these reasons, be imputed to the bank. *Mayor, etc. of New York v. Tenth Nat. Bank*, 111 N. Y. 457; *Constant v. University*, 111 N. Y. 610.

The cases relied on by the appellant's counsel really sustain this conclusion, and it is decisive of the case. If, in making the deposits in question, Day, as president and general manager, had in fact represented and acted for the bank, instead of its tellers, and for himself as well, the bank would have been affected and charged with notice of his wrongful use of the funds in question. Such, in substance, was held in the case of *Atlantic Cotton Mills v. Indian*

*Orchard Mills,* 147 Mass. 268; and of *First Nat. Bank of New Milford v. New Milford,* 36 Conn. 93. In the case of *Loring v. Brodie,* 134 Mass. 453, the law is well stated in relation to the act of a cashier of a bank in receiving securities for it, and whether the knowledge he had at the time affected the bank. It was there said: "If he [the cashier] received the securities with the knowledge that they were wrongfully transferred and were the property of others, his knowledge must affect the bank. His attitude and relation were such that it was his duty to communicate this information to the bank, and it cannot be deemed that he was a mere channel of transmission, and that his knowledge affected only himself. Although he was the attorney of Brodie in taking care of and managing the trust property, he was the cashier also of the bank, and there was a confidence reposed in him as such which makes his knowledge the knowledge of the bank. . . . The only authority the bank could have to hold or sell them [the securities] was under the contract made *by or through Fuller, its cashier.*" In that case, Fuller, acting for the bank, owed it a duty to communicate the knowledge he had, or act accordingly; but in this case Day, in making the deposits in question, owed the bank no duty whatever to communicate to it the real ownership of the money deposited, any more than a mere stranger, and for that reason the bank is not charged or affected with his knowledge of the ownership of the money and of the fiduciary character in which he had received and held it. The fact that he was president and general manager of the bank, therefore, is immaterial, because he did not do, or assume to do, any act in such capacity in relation to the receipt and deposit of the moneys in question, but acted solely in his private and personal capacity. The case of *Holden v. N. Y. & Erie Bank,* 72 N. Y. 286, is in entire conformity with the view we have taken of the transactions in question.

In that case the bank was held responsible for the fraud of its president to the extent it had profited by it, because he acted in behalf of the bank in all the transactions in question, and it was held that the bank was affected by his knowledge, although acquired in a continuous dealing, made up of a long series of previous transactions. Page 292.

The fact that Day conducted a loan business, collected moneys for others, deposited only in the Plankinton Bank, and kept no separate account, was not of itself notice to the bank that he was violating any fiduciary or trust relations in the conduct of his business, or that he did not promptly pay over to the proper parties all moneys received by him in a fiduciary capacity.

2. It is not made to appear by the agreed statement that *William Plankinton,* as assignee of the Plankinton Bank, took or received or owns or holds, in his capacity as assignee, any property or assets of any kind into which the moneys, or any part thereof, collected by Day for the petitioner, were converted; nor is it made to appear that the bank had any general fund or moneys which passed to the assignee by the assignment, into which the petitioner's moneys were traced as forming a part thereof. The money in question having been collected by Day in a fiduciary character, and paid by him to his own account, the petitioner for whom he so collected it could follow it, and might have *a charge on the balance,* if any, in the hands of the bank, and so long as the trust property could be traced and followed into other property into which it had been converted, that would remain subject to the trust; and the court will go as far as it can in thus tracing and following trust money, but when, as a matter of fact, it cannot be traced, then the right of the real owner to follow it fails, for the right to so follow and trace it has its basis in the right of property. These views are in accord with and supported by the recent case of *Nonotuck Silk Co. v. Flanders,*

*ante*, p. 237, wherein the entire subject is fully considered, and the principal authorities are collated and considered in the opinion of Mr. Justice CASSODAY. A reference to this case only is necessary. It is there laid down that "all such cases turn upon the question of fact whether the trust property or fund, or the proceeds thereof, are traceable into any specific property or fund." The case is wholly destitute of any allegation or statement that any of petitioner's money remained on hand at the time of the assignment *in specie*, or as forming a part of any general fund, or that it had been converted into any other specific property which passed to the assignee. It further appears beyond dispute that all the funds deposited in the bank by Day belonging to the petitioner, and constituting the amount of his claim, were drawn out by Day upon his checks before the assignment; that when he commenced to make such deposits his account was largely overdrawn, and so continued until after he ceased to make deposits and until the date of the assignment, when the amount of his overdrafts was over $30,000, notwithstanding, in the meantime, he had been credited on his account with discounts of his individual notes to the amount of $65,000. Having deposited the petitioner's money to his private account, he had a right to withdraw the money, and the bank was bound to pay it to him on his demand. This would be a restoration of it to the fiduciary custody of Day. There is nothing to show that the bank acted in bad faith in paying it out on Day's checks, and, so long as the bank did not participate in any breach of trust, there is no liability on its part for the money. It was the duty of the bank to pay on the checks of the depositor so long as no other person asserted a claim to the money; and, where there has been no participation on the part of the bank in any breach of trust, it is too late for the real owner of the fund to make any claim against the bank after it has all been paid out on the checks of the

Burnell vs. The West Side R. Co.

depositor. Morse, Banks, 300; *National Bank v. Insurance Co.* 104 U. S. 54; *Gray v. Johnston,* L. R. 3 H. L. 1, 14; *Munnerlyn v. Augusta Sav. Bank,* 86 Ga. 333.

It is plain, for these reasons, that the petitioner has no claim whatever against the property and assets of the Plankinton Bank in the hands of its assignee.

*By the Court.*— The order of the circuit court is affirmed.