8188

ARTHUR v. BROW|N.

:1. NOTES—EVIDENCE—WRITTEN INSTRUMENTS.—PAROL TESTIMONY is not admissible to show a simple written promise to pay, on which the money was paid by the payee, was no promise or created no liability on the part of the maker.

Placing the letter "c" after the signature of the maker does not make evidence admissible.

If the word "conditional" had been written after the signature, it might have been competent to show by parol that the promise was made on some condition to be performed by the payee, but it would not have made the evidence competent to show there was no promise to pay.

-2. IBID.—BANKS—OFFICERS—BREACH OF TRUST.—If such testimony were admissible and it tended to show the president of the payee bank was desirous of making a loan on security which the bank was supposed not to be allowed under the law to take, and the maker was requested to make the note, take the security and assign it to the bank to evade the supposed law, and that he was not to be liable, the president would then be guilty of breach of trust, in which the maker would be a participant, and he would have no power to bind the bank by such transaction.

:3. IBID.—FRAUD—INDORSER—SURETY.—THE INSTRUCTION that if the maker was deceived into signing the note as indorser or surety by the false promise that he would not be liable in order to allow the

principal debtor to use a security he could not otherwise use a fraud. was practiced upon him and he would not be liable, should not have been given as there was no evidence to support it.

4. IBID.—MORTGAGES—RECORDING.—IF A SURETY to a debt secured by a mortgage did not acquiesce in the failure to record the mortgage, such failure was mere passive inaction which would not discharge the surety, but at most only give him the right to have credit for the depreciation in the value of the security due to failure to record.

Before ALDRICH, J., Union, Fall term, 1910. Reversed.

Action by B. F. Arthur, Wm. H. Gist and H. B. O'Shields, as receivers of the Peoples Bank, against J. A. Brown. Plaintiffs appeal.

*Messrs. Wallace & Barron,* for appellants, cite: *The letter "C" below signature does not affect note:* 36 S. C. 553; 28 S. C. 469; 8 Rich. 346; 44 S. C. 15. *Parol evidence as to agreement between defendant and president of bank is not admissible:* 2 Bail. 342; 1 McC. Chan. 490; 1 Hill 32; 2 Bail. 107; 4 Rich. 507; 5 Rich. 305; 3 S. C. 5; 13 S. C. 328; 48 S. C. 337; 39 S. C. 281; 5 U. S. 349; 1 Green. Ev., sec. 275; 4 Ency. 484. *President had no power to make the contract set up:* 21 Ency. 858; 1 Ency. 1030n; 17 Ency. 126n, 129d, 7e, 157f, 159; 3 Ency. 844; Code 1902, 323, 1774, 1883; 39 S. C. 295; 21 Ency. 897. *Effect of failure to record mortgage:* 22 Ency. 899, 903g; 37 S. C. 210; 3 Strob. Eq. 59; 51 S. C. 129.

*Mr. J. Ashby Sawyer,* contra, cites: *Parol evidence as to the contract is admissible under the facts here:* 13 S. C. 328; 44 S. C. 544; 53 S. C. 548; 128 U. S. 490; 22 S. C. 10; 32 S. C. 243; 41 S. C. 163; 6 L. R. A. 33; 33 L. R. A. 892; 18 L. R. A. (N. S.) 288; 1 L. R. A. 816; 1 Ency. 343; 3 Am. & Eng. Cas. 559; 6 Id. 167; 21 Ency. 1111; 60 Am. R. 666, 543; Brown on Parol Ev. 251; 4 Ency. 199; 39 S. C. 146; 75 S. C. 263; 71 S. C. 150; 21 Ency. 1099; 1

Ency. 360-1; 20 L. R. A. 705; 9 A. &. E. Cas. 1193. *Was
the agreement between the parties ultra vires:* 66 S. C. 570;
18 Sup. Ct. R. 808; 54 S. C. 596; 28 S. C. 134; 96 U. S.
258; 13 L. R. A. (N. S.) 793; 99 U. S. 191; 11 L. R. A.
845; 64 S. C. 381; 67 S. C. 722; 96 U. S. 341; 13 L. R. A.
(N. S.) 795; 9 A. & E. Ann. Cas. 1193; 2 Cook on Corp.
1609; 3 Cook, sec. 869; 68 S. C. 363; 29 Ency. 71; 10 Cyc.
1149, 1151, 1162-4. *Judgment will not be reversed for
technical inaccuracies not shown to have been prejudicial:*
79 S. C. 125. *What will discharge a surety in equity may
be set up as a defense at law:* 2 Bail. 551; 2 S. C. 351.

April 23, 1912. The opinion of the Court was deliv-
ered by

MR. JUSTICE WOODS. On April 18, 1907, J. A. Brown
made his promissory note to the Peoples Bank of Union,
whereby he promised to pay on demand six thousand dollars
with interest after maturity at the rate of eight per cent. per
annum. The note expressed that Brown had deposited with
the bank as collateral a bond and mortgage executed on the
same day by W. H. Sartor for six thousand dollars. The
sum of six thousand dollars was then credited to Brown as
a deposit made by him, and he immediately gave a check to
W. H. Sartor or order for the entire amount. Sartor
endorsed the check, received credit for it on his account and
afterwards checked it out for his own purposes. The bank
failed in August, 1908, and B. F. Arthur, Wm. H. Gist and
H. B. O'Shields were appointed receivers. In this action
by the receivers against Brown, the maker of the note, the
verdict was for the defendant. The exceptions are numer-
ous, but few of them need be referred to in detail.

The defendant admitted the making of the note and set
up two defenses: First, that the note was given by him
without consideration and entirely for accommodation at the
instance of B. F. Arthur, president of the bank, and upon an

express agreement with Arthur and Sartor that he was not to be liable thereon. Second, that the bond and mortgage given by Sartor, while nominally to the defendant, were intended for the bank, that the defendant allowed his name to be used merely to avoid the appearance of the bank taking the papers directly, that the bond and mortgage were immediately assigned to the bank and left with it, that the bank greatly impaired the security of the mortgage by failing to have it recorded, and that if he was ever liable on the note, he was discharged by the negligence of the bank in failing to record the paper.

The defendant testified in support of his first defense that Arthur, the president of the bank, was personally concerned that Sartor should obtain a loan of six thousand dollars from the bank, and solicited the defendant to sign the note and take from Sartor the bond and mortgage and assign them to the bank, as an accommodation; that he, at first, declined, but finally signed the note, allowed the bond and mortgage to be given to him, assigned them to the bank, allowed the six thousand dollars to be placed to his credit, and gave Sartor a check therefor, on an express agreement made by Arthur, the president of the bank, that he should not be liable on the note—in short, that the whole transaction was, on his part, a matter of form merely, and that the note though in form a promise to pay was not so in fact. The defendant further testified that he placed a small letter "c" after each of his signatures to indicate the condition that he was not to pay. This testimony and that of other witnesses tending to corroborate defendant's account of the transaction was objected to by counsel for plaintiff as an attempt to alter the terms of a written instrument by parol testimony.

. This case does not call for discussion of the intricate distinctions made in the application of the rule that parol evidence is admissible to alter the terms of written instru-

ments. No authority has been cited, and we think none can be found, which would allow the defendant to do what he has here done, namely, to make in writing a promise to pay, on which the money of a bank was paid out by one of its officers, and then prove by parol evidence that the written promise was no promise, and was to have no force or effect of any kind. Making the letter "c" after the signature does not make the testimony competent. Even if the word "conditional" had been written out it might possibly have made competent parol evidence that the defendant's promise was made on some condition to be performed by the bank—that his promise made in the note was conditional—but it would not have made competent evidence that there was never any promise at all to pay, conditional or unconditional.

In *Cline* v. *Farmers Oil Mill,* 83 S. C. 204, 65 S. E. 272, it was held that a simple promissory note for one hundred and fifty dollars, for one bay mare mule, cannot be defeated by parol evidence to the effect that that sum was only to be paid in case the maker collected fifty dollars of one man and fifty dollars of another, as this evidence would vary the terms of the note. To the same effect is *Cape Fear Lumber Co.* v. *Evans,* 69 S. C. 93, 48 S. E. 108.

Let it be assumed, however, that the evidence was competent and that it established beyond controversy that Arthur, the president of the bank, did agree with defendant that he should not be liable on the note; when such evidence is considered in connection with the reason assigned by the defendant for the transaction it tended rather to fasten responsibility on the defendant than to relieve him of it. On this point defendant testified as to Arthur's statements to him: "He said that Sartor was obliged to have six thousand dollars, and he intimated that there was more interest for him to have it than Sartor, and Mr. Sartor had to have it, and he went over the whole thing. Said that Mr. Sartor had the security, plenty of

security, but under the banking laws and on account of the
examiner they could not take paper on real estate and loan
money on it, and asked me if I would do he and Mr. Sartor
that favor and let them use my name; said they would fix
the paper and I would have no expense whatever." Taking
this statement of the defendant as true its effect extends
altogether beyond the doctrine of *ultra vires*. The inquiry
is not whether the president of the bank was acting within
the apparent scope of his authority in making the promise
that the defendant should not be liable, but whether the
president was not proposing a breach of trust to which the
defendant assented and in which he undertook to partici-
pate. Stated in its naked verity, the plan proposed by the
president and agreed to and carried out by the president,
the defendant and Sartor was that the note should be given
in order that the president might use the funds of the bank
by making a loan in which he had a personal interest, under
the appearance that he had taken the obligation of the
defendant when he had not; and that this pretense should
be adopted for the purpose of evading a supposed law and
misleading the bank examiner into the belief that the
defendant was liable for a loan of the bank's funds, when,
in fact, he was not. Having entered into this scheme it
seems evident, beyond argument, that the defendant cannot
be allowed to say that the apparent liability was not a real
liability. The scheme of deception was a manifest breach
on the part of the president of the trust reposed in him,
under the charter, by the stockholders and directors of the
bank, in which breach of trust the defendant was a partici-
pant with full knowledge. Attributing to the president the
fullest power to manage the credits of the bank, as its repre-
sentative, the instant he proposed a breach of his trust to
the defendant, and the defendant knowingly entered into it,
the president was stripped of his representative character
and of his power to bind the bank; the president and the
defendant, then, stood together in antagonism to the bank,

21—91

the president's power to bind the bank fell from him, and hence his agreement that the defendant should not be liable was not the agreement of the bank. As between himself and Sartor, and himself and Arthur, the defendant might have been an accommodation maker of the note, but when he entered into the plan imputed by him to Arthur and signed the note and had the bank's money placed to his credit, as to the bank he was a maker of the note for value.

In *State* v. *Talley,* 77 S. C. 99, 57 S. E. 618, 11 L. R. A. (N. S.) 938n, the principle is thus stated: "Corporations, public and private, as well as individuals, must often be held by the fraudulent acts of officers or trustees in their dealings with other persons who are innocent of fraud. But it is axiomatic that where the officer or the trustee and the person dealing with him are both guilty of fraud in the transaction, the fraud completely strips off the quality of representation and the trustee or officer is to be considered the mere instrument or conduit through which the fraud is perpetrated." The same principle was applied in *Knobelock* v. *Bank,* 50 S. C. 259, 27 S. E. 962. The testimony offered in support of the first defense did not tend to relieve the defendant of liability on the note. Therefore, even if the testimony had been competent, to contradict or vary the terms of the note, it was irrelevant because it did not support any defense.

By the charge the question was submitted to the jury whether, under the evidence above set out, the defendant was deceived into signing the note as indorser or surety by the false promise that he would not be liable, in order to allow the principal debtor to use certain securities which he otherwise could not use; and the instruction was given that if the defendant signed the note under these conditions a fraud was perpetrated upon him and he would not be liable. The instruction was erroneous because no such issue was made by the testimony, and there is not a particle of evidence that the defendant

was in any way deceived into signing the note. On the contrary, as we have shown, he fully understood the purpose of taking his note and the illegal scheme which he agreed, to assist the president of the bank in carrying out. The instruction should have been that there was no evidence to sustain the first defense. This conclusion renders unimportant Arthur's testimony that he did not make the agreement attributed to him, and that he took the note for the money paid out on it.

As to the second defense, the Court refused the following request of the plaintiff: "That if the jury find that the bank failed to record the collateral mortgage of W. H. Sartor, which was put up by Brown with the bank, and that as a consequence of such nonrecording Brown has lost the benefit of such mortgage in any extent, then the amount which Brown shows, or which the evidence shows, Brown has lost by such failure to record such mortgage, should be allowed as a credit on the debt by the jury. But if the jury find that the bank failed to have the said mortgage recorded in time, relying upon the instruction of Brown and Sartor, or Sartor with Brown's consent or acquiescence, to keep the same off the record, then the fact that there has come a loss to Brown, the amount of which he lost by the failure to record the mortgage, even if the amount be clearly shown by the evidence, would not constitute a defense, or credit on the debt evidenced by the note, and should not be allowed by the jury." Contrary to this request the Court charged in effect that if the bank, having the mortgage in possession as a collateral, failed to record it, without the consent or acquiescence of the defendant, he would be entirely discharged.

Even if Brown were a surety, and if he did not acquiesce in the failure to record the mortgage, the failure to record was mere passive inaction which would not discharge the surety, but at most only give him a right to have credit for the depreciation in the value of the security due to the

failure to record. The most favorable statement of the law on this subject that the defendant could ask was contained in the request submitted by plaintiff's counsel, above quoted.

In *Lang* v. *Brevard,* 3 Strob. Eq. 59, in consequence of the failure of the bank to record a mortgage held as security its value was impaired, and the Court said with respect to the surety, Brevard: "In the case we are considering, Alfred Brevard, if he had been himself active and vigilant, might have easily discovered that the mortgage was not recorded. He might have demanded that the mortgagee should have it recorded; or that it should be delivered to *him* for that purpose. If this legitimate demand were refused, and injury had resulted to the surety, from the nonregistry of the mortgage, he would have been entitled to relief. In not pursuing this course he has not himself been vigilant, and the maxim *vigilantibus et non dormentibus,* etc., applies." *Jackson* v. *Patrick,* 10 S. C. 197; *Rosenborough* v. *McAlily,* 10 S. C. 235; *Fales* v. *Browning,* 68 S. C. 13, 46 S. E. 545; *Fretwell* v. *Carter,* 83 S. C. 553, 65 S. E. 829

We are not called upon at this time to decide whether the defendant was entitled to credit for the impairment of the value of the mortgage security by the failure to record, as that point was conceded at the trial by the plaintiffs in their request to charge.

It is the judgment of this Court that the judgment of the Circuit Court be reversed and the cause remanded for a new trial