FARMERS & MERCHANTS STATE BANK, Respondent, vs.
PERRY, Appellant.

*January 14—February 10, 1925.*

*Banks: Conditional liability of maker of note: Note for **subscrip-
tion** in corporation: Secret agreements: Validity: Public
policy: Knowledge of cashier as imputed to bank: When
cashier is interested in transaction.*

1. Knowledge of a bank cashier and of the maker of a note as to
   a secret oral agreement concerning the maker's conditional
   liability on the note, which was given in payment of stock of
   a newly organized corporation, the purchase of which fur-
   thered the individual interest of the cashier and of the maker
   of the note, is *held* not imputable to the bank.   p. 97.

2. The payee bank, accepting the note for shares of stock in the association and disbursing the amount represented by it for the benefit of the association without knowledge of the secret agreement as to the conditional liability of the maker, was a *bona fide* purchaser for value.   p. 97.

3. The secret agreement existing between the maker and the cashier is *held* void under sec. 221.17, Stats., as against public policy in having for its object the deception of the bank examiner with respect to the true condition of the bank. p. 98.

4. Defendant and A., who were officers in an incorporated hospital association, defendant being its prime mover and promoter and A. being interested in a hotel which the association contemplated purchasing, sustained a fiduciary relationship to the association which required of them the exercise of absolute good faith towards it and the disclosure to the association and its stockholders of all knowledge in their possession with respect to the secret agreement as to defendant's conditional liability on the note, the execution of which operated as an inducement to secure other subscribers and thus made possible the purchase of the hotel property.   p. 98.

5. Knowledge of the officers of an incorporated association of the secret agreement as to the conditional liability of one of them, which knowledge was adverse to the interests of the association, is not imputable to the latter, where the enforcement of the agreement would operate as a fraud on the association and the subscribers to its capital stock.   p. 98.

6. A subscriber to stock under an optional agreement to demand the return of a note given in payment of the stock is *held* to have elected to retain the stock, thus making his liability on the note absolute.   p. 98.

APPEAL from a judgment of the circuit court for Polk county: W. R. FOLEY, Circuit Judge. *Affirmed.*

The plaintiff is a state bank located at Amery, Wisconsin. The defendant for a number of years prior to 1917 was a practicing physician and operated a private hospital at Amery.   In order to establish a larger institution so as to enable the profession to enjoy larger and better facilities, the defendant prior to 1917 agitated the establishment of a new hospital and became actively engaged in promoting such enterprise, all with the result that in 1916 a corpora-

tion known as the Polk County Hospital Association was organized and a certificate of incorporation was procured. The defendant was one of the principal subscribers to the stock of the new hospital and became its president and chief surgeon. One Burman was the president of the plaintiff bank, and one Amundson was its cashier, and these two persons individually were the owners of a certain hotel building at Amery which they were anxious for the new association to purchase and to use as a hospital. The plaintiff had a board of directors consisting of nine stockholders, of which the defendant, Burman, and Amundson were members.

In the spring of 1917 the defendant applied for an enlistment in the army, and his application was accepted in the fall of the year. On or about the 1st day of July, 1917, at a meeting of the association, new officers were elected and Amundson became the secretary of the association, and the defendant the vice-president and a member of the building committee. At or about that time the financing of the association became a vital issue, and, it having been determined to purchase the building belonging to Amundson and Burman, Amundson became busy in establishing a definite financial plan under and pursuant to which the subscribers were requested either to pay for the stock subscribed for by them or to execute notes for the amount of their subscriptions, payable to the bank, with the understanding that the notes were to be received and held by the bank and the amount of the notes credited to the association. With this plan in view the defendant was approached by Amundson, with the result that he executed his note for $1,000 with interest, payable on or before six months after date, and the payment of such note was duly guaranteed by the hospital association. The note so executed was left with the bank and the amount thereof credited to the association, and from time to time was drawn on to defray the expenses of the purchase and of rebuilding. About three weeks after the execution of this

note the stock subscribed for by the defendant was delivered to and retained by him.

The defendant testified that when he signed the note he had already volunteered for military service, and that he told Amundson that owing to the uncertainty of his return he did not desire to bind himself absolutely, but only conditionally, so that in the event of his failure to resume his practice at Amery after the close of his military service he would be able to return the stock and to have the obligation to the bank canceled. According to his testimony this proposition was satisfactory to Amundson, but Amundson expressly denied any such condition. Between the date of the defendant's election to the office of vice-president and as a member of the building committee, and the acceptance of his application for enlistment, he was actively engaged in the establishment of the new hospital. He also attended meetings and took an active part in the deliberations of the association. He testified also that at the time he signed the note Amundson told him that he would not be obliged to pay the note, and that he could at any time return his stock and cancel the note, and that Amundson wanted the note so that the bank records might be kept straight, that he might be able to show this note to the bank examiner whenever the latter made an examination of the bank.

The defendant also testified that upon his return in 1919 to Amery on a furlough he tendered back his stock to Amundson, claiming that conditions were such as to prevent him from resuming his former practice, and that Amundson refused to receive the same or to cancel the note. Amundson, however, denied at all times that he had entered into any conditional agreement with the defendant, or that the defendant ever claimed that he had the right to return his stock and demand the cancellation of the note.

A single question was submitted by the special verdict to the jury, as follows: "Q. Was the note, Exhibit A, signed

and delivered on the condition that *Dr. Perry* would have the option to return the stock and have the note canceled?" To which the jury answered "Yes."

Thereupon the plaintiff moved for judgment notwithstanding the verdict, which motion was granted, and upon the entry of judgment this appeal was prosecuted to this court.

For the appellant there were briefs by *W. T. Doar* of New Richmond, attorney, and *Buckmaster & Hammond* of Kenosha, of counsel, and oral argument by *W. W. Hammond*.

For the respondent there was a brief by *Kennedy & Yates* of Amery, and oral argument by *W. T. Kennedy*.

DOERFLER, J.    The defendant was the prime mover in the organization of the association, and its promoter. He was also a subscriber to the capital stock of the association. The execution of the note was merely a part of the financial scheme. As part owner of the hotel property, Amundson in securing this note represented his individual interests. The defendant, by executing the note with the conditional agreement, attempted to serve his own personal interest, which afforded an opportunity to be released from his liability on his subscription. Under such circumstances the knowledge of Amundson and that of the defendant did not become the knowledge of the bank. *Johnson v. Blumer,* 183 Wis. 369, 197 N. W. 340, 198 N. W. 277; *In re Plankinton Bank,* 87 Wis. 378, 58 N. W. 784; *Shaw v. Crandon State Bank,* 145 Wis. 639, 653, 129 N. W. 794; *Timme v. Kopmeier,* 162 Wis. 571, 575, 156 N. W. 961.

The conditional secret agreement resulted in the acceptance of the note by the bank and the disbursement of the amount represented by it for the benefit of the association. The bank, therefore, became a *bona fide* purchaser of the note for value.

Under the agreement as testified to by the defendant, the bank was to hold the note as an unconditional asset, to be submitted to the bank examiner upon his making an official examination of the affairs of the bank. It was thus designed by the parties to the secret agreement to exhibit a false report or showing to the bank examiner in order to deceive him with respect to the true condition of the bank, in violation of the provisions of sec. 221.17 of the Statutes. The agreement was therefore void on the ground of public policy, and the defendant, being a party to the fraud, cannot successfully maintain his defense.

The defense interposed operates not only as a fraud upon the bank but also upon the association. The defendant was the prime mover and promoter of the association. He was also an officer and a member of the building committee. Amundson was its secretary and individually interested as a part owner of the property. The defendant's subscription was absolute and unconditional and operated as an inducement to secure other subscribers. Both Amundson and the defendant, therefore, held a fiduciary relationship to the association, which required of them the exercise of absolute good faith towards it and a disclosure to the association and to the subscribers of the stock of all knowledge in their possession with respect to the transaction. Such disclosure does not appear from the evidence. The interests of both Amundson and the defendant being adverse to the interests of the association, as far as the secret agreement was concerned, the knowledge thereof by these two persons is not imputed to the association, and the enforcement of this secret agreement would therefore operate as a fraud on the association and upon the subscribers to its capital stock.

The defendant accepted the stock and retained it. Thereafter he participated in the meetings of the association and enjoyed all the privileges of a stockholder. Assuming, therefore, that he had an option to return the stock and to demand the return of his note, he fully declared upon such option in

favor of the retention of his stock.   Under such circumstances his liability became absolute.

Plaintiff's counsel also insist that the trial court had no authority to extend the time for serving the bill of exceptions beyond the period of one year during which, under the statute, an appeal might be taken from the judgment.   In view of the foregoing opinion it will not be necessary to consider this point.

*By the Court.*—Judgment affirmed.