FIRST NATIONAL BANK OF WASHBURN, Respondent, vs. OKERSTROM, Administratrix, and others, Appellants.

*May 11—June 18, 1928.*

392

For the appellants there was a brief by *Lamoreux & Cate* of Ashland and *A. W. MacLeod* of Eau Claire, and oral argument by *Mr. MacLeod*.

For the respondent the cause was submitted on the brief of *Walsh & Morris* of Washburn.

DOERFLER, J. The issue herein involved resolves itself into the question of whether the two notes above referred to, for $2,000 each, maturing respectively December 5, 1921, and December 5, 1922, together with the land contract securing the same, were transferred to the Bayfield County Bank as collateral security to the indebtedness of the Land Company to said last named bank of $11,000, evidenced by notes, or whether the Bayfield County Bank actually purchased said notes aggregating $4,000, and said land contract, in such a way as to make it the owner thereof.

The learned circuit judge, while of the opinion that the entry upon the loan and discount register of the bank was persuasive that the bank became the owner of the two notes and the land contract in question, concluded not to rest his decision thereon, but to base it upon the ground of estoppel. In accordance with the view expressed by him in his opinion, D. M. Maxcy was charged with knowledge that where a bank becomes insolvent, and where its assets are seized by the commissioner of banking for the benefit of creditors, the affairs of the bank must be liquidated by a sale and disposition of the assets; and that inasmuch as the two notes and the land contract herein involved were registered in the loan

and discount register as assets of the bank, it became the duty of the Land Company to see to it that knowledge was brought home to the commissioner of banking that these securities were actually merely held as collateral. The circuit judge also discredited D. M. Maxcy's testimony to the effect that he did give notice to the banking examiner in due time. Inasmuch as D. M. Maxcy controlled the bank and was its president, and at the same time was also the secretary and treasurer of the Land Company (in which, however, he had no controlling interest), it was assumed by the circuit judge that the knowledge of Maxcy of the entry in the loan and discount register must be presumed to be also the knowledge of the Land Company.

When Maxcy, however, directed the making of this entry in the loan and discount register of the bank, he did not act for and in behalf of the Land Company, but as an officer of the bank. It is highly probable that in the making of this entry it was calculated that the bank might derive some advantage, and the only advantage apparent to us consists of false appearances created, which would tend to reflect the solvency of the bank upon an examination made by the representative of the banking department. The Land Company in law, therefore, was not charged with Maxcy's knowledge of the existence of this entry or of his act in directing its making. *Johnson v. Blumer,* 183 Wis. 369, 197 N. W. 340, 198 N. W. 277; *In re Plankinton Bank,* 87 Wis. 378, 58 N. W. 784; *Shaw v. Crandon State Bank,* 145 Wis. 639, 653, 129 N. W. 794; *Timme v. Kopmeier,* 162 Wis. 571, 575, 156 N. W. 961; *Farmers & M. State Bank v. Perry,* 186 Wis. 93, 202 N. W. 179; 2 Pomeroy, Eq. Jur. (2d ed.) § 675; 10 Ruling Case Law, 725.

A review of the evidence in this case discloses an absence of any entry in the Land Company's books showing that it had received the proceeds of the two notes in question, and from the records of the bank it also appears that the Land Company had not received credit for the amount of the notes.

To our mind these facts are highly persuasive that the transfer of the two notes and of the land contract was made as collateral, particularly in view of the large indebtedness evidenced by the $11,000 notes of the Land Company to the bank.

There was also evidence in the case that the two notes aggregating $4,000, together with the land contract, were attached to the notes of the Land Company to the Bayfield County Bank, and kept in a wallet, and that this is the ordinary manner in which collateral notes are attached and kept by banks.

· Under these circumstances, the conclusions arrived at by the lower court are neither logical nor tenable. Had the Bayfield County Bank remained solvent, the claim of ownership, under the facts and circumstances of this case, would not be available to it, and the commissioner of banking, who succeeded to the rights of the bank, acquired no greater rights by virtue of the insolvency than the bank itself possessed. The mere entry made in the loan and discount register did not convert the security held as collateral into ownership on the part of the bank.

Having now concluded that the two notes and the land contract were held by the bank as collateral, W. G. Maxcy having purchased the notes aggregating $11,000 of the Land Company from the commissioner of banking, the rights to the collateral notes and contract as a matter of law went with such purchase as an incident thereto. *Hawkins v. Fourth Nat. Bank,* 150 Ind. 117, 49 N. E. 957; *Roach v. Sanborn Land Co.* 135 Wis. 354, 115 N. W. 1102; 5 Corp. Jur. p. 948, § 124, cited in appellants' brief.

We therefore conclude that the judgment of the lower court must be reversed.

*By the Court.*—The judgment of the lower court is reversed, and the cause is remanded with directions to dismiss plaintiff's complaint.