SCHWENKER, Commissioner of Banking, Respondent, vs. TEASDALE, Appellant.

*November 12—December 8, 1931.*

For the appellant there were briefs by *Higbee & Higbee* of La Crosse, and oral argument by *Jesse E. Higbee.*

For the respondent there was a brief by *Donovan & Gleiss* of Tomah and *Grady, Farnsworth & Walker* of Portage, and oral argument by *Daniel H. Grady* and *T. P. Donovan.*

FAIRCHILD, J. Each proposition advanced by the appellant as a reason for excusing him from liability upon the note described in the preceding statement, and executed by him,

was held to be ineffectual as a defense. On the facts found, which outline and condition the controversy between the parties, the conclusions reached by the trial court are warranted.

That the note was not delivered conditionally and for a special purpose so far as the bank is concerned, appears from the evidence strongly tending to show that the note was for the accommodation of Anderson and not the bank. This transaction grew out of the necessities of the financial situation in which Anderson was at the time he sought help from appellant. Anderson's account at the bank was overdrawn; he was a borrower to an extent so much in excess of the limit fixed for one borrower that the commissioner of banking was insisting upon a reduction of his indebtedness. The minutes of the proceedings of the board of directors show this: "Letters of communication of November 3d (1927) covering Mr. Anderson's account was taken up and he requested us to solicit an extension of ninety days, as he was working hard to meet these requirements. Motion made that the meeting adjourn." On November 17th Anderson asked the bank's cashier, Brennan, whether the bank would take a note from Teasdale for $5,000, and after a conference with the chairman of the loan committee Brennan agreed to accept from Anderson the note in question, which was credited to Anderson's account.

Anderson's request of the appellant for his note resulted in the appellant's taking from Anderson a note payable to appellant executed by Anderson and his sister in like amount and terms as the note which was signed by appellant payable to the bank. Appellant understood he was incurring a liability to the bank in executing the note in question. He sought protection by taking the Anderson note in return. He understood the note was to be treated as an asset of the bank without limitation. He testified:

"I suppose, as a lawyer, I might have known that if the note was delivered to the bank for its use without limitation

of purpose it might be treated as a cash loan. . . . I understood they were to get that much additional assets. Q. It was to constitute an asset? A. Yes. I suppose go as a part of their assets, handled the same as other assets."

The circumstances surrounding this transaction compel the conclusion that the delivery of the note was made for the purpose of giving effect thereto; that it was not made, so far as the rights of the bank or the respondent are concerned, for a special purpose, but was for the purpose of transferring the credit and value of the note, the property therein, to the bank. The contract is complete and not revocable and is a valid and enforceable obligation. Sec. 116.20, Stats. This ruling is not in conflict with the doctrine of cases cited by appellant. *Grannis v. Stevens,* 216 N. Y. 583, 111 N. E. 263, involves a different set of facts from those with which we are dealing, as does the case of *Higgins v. Ridgway,* 153 N. Y. 130, 47 N. E. 32, which is treated in the opinion of *Grannis v. Stevens, supra.* In the *Higgins Case* the evidence showed, and the court found, a conditional delivery as well as want of consideration, and that these infirmities were known by all interested. The trial court here permitted a full investigation into the facts and circumstances surrounding the negotiations leading up to the execution of the note and its delivery, and concluded that while Anderson was president of the bank, "still the note was obtained by him in his own behalf and interest, and defendant so executed and delivered the same with the understanding and purpose as follows: A. That it was for the accommodation of said T. E. Anderson, and the amount thereof should be credited to his account at said bank. . . ." Anderson testified: "I told him [appellant] I believed if he would give us his note for our credit we would give him our note." Appellant accepted the Anderson note and retained it. Anderson delivered appellant's note to the bank to be used to meet the needs of Anderson, the note became a completed contract, and the bank gave value therefor.

In concluding that the note was for the accommodation of Anderson and that defendant's signature was not induced by fraud and misrepresentation, the trial court was guided by evidence to the effect that while Anderson was president of the bank he was not in fact its managing officer. He was engaged in other matters although frequently at the bank, the largest individual stockholder, and a heavy borrower. Brennan, the cashier, was in active management. There is ample evidence to support a finding that the state commissioner of banking, Brennan, and the directors had for some time been active in urging Anderson to reduce his loans at the bank and to pay up his overdrafts. Shortly before the transaction with appellant, Anderson was asking for more time to arrange matters, and Brennan testifies: "Mr. Anderson called at the bank and asked if we would take Howard Teasdale's note for $5,000, and I answered that, subject to the approval of the loan committee, such note would be satisfactory." There is testimony tending to show that the note was taken to the bank and credit therefor was secured by Anderson; that Brennan and the other officers knew nothing else of the transaction between appellant and Anderson. It is rather plain that at this crisis in the affairs of both the bank and Anderson the interest of each was adverse to that of the other. This state of affairs would not permit of Anderson's being the bank's representative, as generally one is not permitted to act as agent for another in transactions in which he is personally interested, without the full knowledge and consent of his principal. Mechem, Agency (2d ed.) § 754; *Jackson County Bank v. Parsons,* 112 Wis. 265, 87 N. W. 1083; *Farmers & Merchants State Bank v. Perry,* 186 Wis. 93, 202 N. W. 179.

The learned trial judge stated in his opinion:

"The defendant testified that the purpose of the note of Anderson and his sister was to 'protect' and 'guard' against the payment of his note to the bank. The defendant, among

other things, testified: 'Q. Before you executed the note payable to the bank you exacted from Mr. Anderson his promise he would give you that note? A. I exacted his promise he would give me that note. Q. Unless he would give you that note, signed by himself and his sister, you would not execute the note now in suit? A. He certainly inferred that from what I said. Q. Just what did he, Anderson, state to you with respect to that note? A. This note is a note to protect you; guard against paying this other note.'

"Nothing could be clearer from this testimony than that the whole thing was a personal transaction between Anderson and Teasdale to which the bank was in no sense a party and that the defendant looked to Anderson and the Anderson note for guarantee against payment. This situation would seem to me to bring the case squarely within the terms of sec. 116.34, Wisconsin Statutes."

Anderson while engaged in a transaction in which he was personally interested, out of which he was to secure a benefit, was representing himself only, and in the absence of actual knowledge on the part of those who at the time were the only ones who could represent the bank, the acts of fraud, if any, and the agreements of Anderson in his own behalf are not imputable to the bank. The bank is a separate entity and in this instance its interests were directly in antagonism to the interests of Anderson. The procuring of the note by Anderson and using it for the purpose of paying his debts to the bank was his act. There appears to be little room for dispute but that it was Anderson's purpose in obtaining the note to use it for his own benefit; that he had a direct personal interest in this matter and acted for himself. 1 Morse, Banking, p. 389.

Appellant's contention that he was not estopped as against plaintiff to assert that the note was obtained by fraud and without consideration was decided adversely to him by the trial court. The ruling was correct. If the agreement was as claimed by appellant, the note was to have been placed

among the bank's assets although by secret agreement it was without value and was to have no validity. A little consideration of the effect of such transactions serves to convince one of the soundness of the legislation which seeks to prevent such practice by imposing a severe penalty upon the officer of a bank who knowingly exhibits false papers with intent to deceive persons authorized to examine into the affairs of the bank. Sec. 221.17, Stats. One who, even thoughtlessly, loans himself to an undertaking to make it possible to mislead in this particular by giving a note absolute on its face, is not in a position to receive any benefit for his alleged agreement from the administrative officers or courts. The vice in the secret agreement destroys it and the note is left free from restraints or limitations sought to be imposed by such agreement. Cases where this agreement has been attempted and have been brought to light are more numerous where banks have been insolvent than where they are solvent, but in *Farmers & Merchants State Bank v. Perry,* 186 Wis. 93, 202 N. W. 179, a situation similar to this occurred and the court said:

"Under the agreement as testified to by the defendant, the bank was to hold the note as an unconditional asset, to be submitted to the bank examiner upon his making an official examination of the affairs of the bank. It was thus designed by the parties to the secret agreement to exhibit a false report or showing to the bank examiner in order to deceive him with respect to the true condition of the bank, in violation of the provisions of sec. 221.17 of the Statutes. The agreement was therefore void on the ground of public policy, and the defendant, being a party to the fraud, cannot successfully maintain his defense."

The bank here involved was held to be insolvent. While not a determining factor so far as the merits of this judgment are concerned, still if this be so there are additional reasons suggested by the cases, such as the derogation of the rights of creditors, why appellant cannot be allowed

to say the apparent liability was not a real liability, and many decisions may be cited to support the ruling that appellant is so estopped. *Pauly v. O'Brien,* 69 Fed. 460; *Bank of Dexter v. Simmons* (Mo. App.) 204 S. W. 837; *Skagit State Bank v. Moody,* 86 Wash. 286, 150 Pac. 425; *Penn Bank's Estate,* 152 Pa. St. 65, 25 Atl. 310; *Arthur v. Brown,* 91 S. C. 316, 74 S. E. 652; Brannan, Negotiable Instruments Law (4th ed.) p. 282.

The record shows the bank was in distress and that it became more and more seriously involved as time went on, until it became necessary for the state commissioner of banking to take charge of its affairs.

The complaint alleges that on the 15th day of April, 1930, said Farmers and Merchants Bank, because of a depletion of its assets, was taken over by C. F. Schwenker, commissioner of banking, etc. The answer alleges: "and said Farmers and Merchants Bank of Tomah was not then [November 18, 1927] solvent, but was insolvent and virtually bankrupt and had not sufficient funds, property, or assets to meet or pay its obligations."

During the trial there was some reference to the state of the pleadings and counsel for appellant said: "We have no knowledge or information sufficient to form a belief. It was our information at the time we drew this answer the bank was insolvent." The pleadings were permitted to remain in the condition above detailed throughout the trial, the trial court treating the allegations in the pleadings as admissions and under the circumstances did not require evidence on the condition of the bank as to insolvency further than that which appears in the record. The admissions of parties in their pleadings may be relied upon, and where there is good reason to believe that they are advisedly made should be controlling in the trial of the case. *Lederer v. Rosenthal,* 99 Wis. 235, 74 N. W. 971; *Knickerbocker v.*

*Beaudette Garage Co.* 190 Wis. 474, 209 N. W. 763. In a situation such as is disclosed by the evidence here, there is good reason to treat the assets as if the bank was insolvent, and with an admission by both parties of that fact in the record the trial court determined the question in accordance with those admissions. After trial appellant asked permission to amend his answer modifying the allegation with reference to insolvency. This motion was denied and we do not find any reason for disturbing that ruling.

From what has been said on other points raised by appellant, it appears that he cannot escape the judgment of the circuit court. Therefore the only result from granting such an amendment would be delay and further expense.

The appellant is estopped to assert the alleged agreement with Anderson as a defense. "When parties employ legal instruments of an obligatory character for fraudulent and deceitful purposes, it is sound reason, as well as pure justice, to leave him bound who has bound himself." *Pauly v. O'Brien, supra.*

Giving full weight to the testimony and proper significance to the agreement claimed to have been made, the appellant is admitting the note was to be put in the bank as an asset to make a little better showing for the bank. The agreement comes within that class condemned as calculated to mislead the commissioner of banking and others interested by creating an appearance of bank assets which do not in fact exist. When this conclusion is reached it becomes necessary to hold that the transaction was a fraud upon the directors, depositors and creditors of the bank, and the state banking department, and this defense becomes unavailable. The note would not be invalidated by the agreement that it was to be returned to the maker after it had served its purpose of misleading those who were bound to search for the exact condition of the bank because the fraud is in the collateral

arrangement and not in the note or the consideration. *Farmers & Merchants State Bank v. Perry, supra; Lyons v. Benney,* 230 Pa. St. 117, 79 Atl. 250, 34 L. R. A. N. S. 105.

The review of the evidence in connection with the propositions already discussed serves to show that the note was not an agreement without consideration to answer for the debt or default of another within the statute of frauds. One may be an accommodation party on a note without receiving value therefor and solely for the purpose of lending his name to some other person and be liable on the instrument to a holder for value, and this notwithstanding such holder at the time of taking the instrument knows him to be only an accommodation party. The purpose of the note was understood by appellant. Under the evidence there can be no question about validity, and so far as the maker is concerned his agreement is that evidenced by the note and is binding upon him. *Johnson v. Bank of Sun Prairie,* 155 Wis. 603, 145 N. W. 178; *Jansen v. Kuenzie,* 145 Wis. 473, 130 N. W. 450; sec. 116.34, Stats. The record discloses no error in denying defendant the privilege of examining the audits made by the commissioner of banking. Deputy commissioners appeared as witnesses at the trial. Defendant sought to examine these witnesses and certain audits. Upon plaintiff's objection the court at first refused to permit further examination or testimony with respect to the audits. The trial court felt bound to sustain the objection by reason of sec. 220.06 and the decision in the case of *Cousins v. Schroeder,* 169 Wis. 438, 172 N. W. 953, but suggested that the offer of proof be made in writing. Counsel for defendant then said: "We haven't any purpose in examining into the records of this bank other than to get specific records which the bank was unable to produce." Then later Mr. Barney, another deputy examiner, was on the stand and examined as to audits and conditions, and the court ruled: "These may all be received subject to objection."

In helping a friend appellant became involved to a degree considerably beyond anything he anticipated. Now, in an effort to ward off the loss resulting from his giving his note, he seeks security in one and another defense. He is here with a record containing many exceptions. A careful review of all of them leaves us of the opinion that no prejudicial error is there shown, that the trial court reached the proper conclusion and entered the only judgment warranted by the law and the facts.

*By the Court.*—Judgment affirmed.