**Orlando P. COLAMATTEO, Plaintiff,**

v.

**Frank W. SCHENKENBERGER, Defendant.**

**No. 56–C–207.**

United States District Court
E. D. Wisconsin.

July 2, 1958.

Harry S. Sicula, Milwaukee, Wis., Herman Klein, Chicago, Ill., for plaintiff.

Aaron D. Levine, Milwaukee, Wis., for defendant.

GRUBB, District Judge.

Action to recover in entirety from the defendant as accommodation indorser upon ten negotiable promissory notes and to recover contribution from the defendant as co-accommodation indorser upon one negotiable promissory note. Trial was had to the court. The court's findings of fact and conclusions of law are as appear in this opinion.

All of the notes were executed and delivered in Wisconsin. They are negotiable instruments within the meaning of section 116.02 et seq., Wis.Stats. On all of them Martin Motors, Inc., is the maker, by defendant as its President, and one William Colamatteo, the brother of the plaintiff, as its Secretary-Treasurer. Home Savings Bank of Milwaukee is the payee, and all of the notes bear, upon the back, an irregular indorsement and guaranty beginning:

> "For value received I/we jointly and severally hereby endorse and guarantee the payment of the within note at maturity, and waive presentment, demand, protest and notice of nonpayment."

On the first ten notes the signatures of defendant and William Colamatteo appear beneath the above-quoted statement, and on the eleventh note appear the signatures of defendant, William Colamatteo, and plaintiff. All of the notes recite the fact that they were secured by chattel mortgages. All are dated within the month of August, 1955, and all except the first four are demand paper. The first four are due, respectively, thirty, thirty-three, thirty, and thirty days after date. All of the notes also bear on the back, alongside the irregular indorsements and guaranties, the qualified, special indorsement of Home Savings Bank. The special indorsee is the plaintiff. The notes contain a schedule of payments on

the back showing principal and interest payments and balances due.

The defendant admits in his answer that a total of $13,185.43, principal and interest, is due on the first ten notes. The eleventh note shows $5,000 still due and unpaid as principal, the original amount of the note. This note, as do all the others, provides for interest at six per cent per annum.

The evidence at trial established the following facts. Plaintiff was the manager of a syndicate or group which owned all the issued and outstanding stock of Martin Motors, Inc., an automobile dealership or agency. Plaintiff, himself, owned from twenty-five to thirty-three per cent of the stock. The agency was doing poorly. Plaintiff discussed with Jacobus Kruyne, the President of Home Savings Bank and the banker for Martin Motors, the possibility of selling or liquidating the agency and taking the loss. Kruyne suggested that the plaintiff talk with a capable automobile agency manager and sometime before May, 1955 introduced the defendant to the plaintiff. The defendant had spent many years in the automobile business and had managed an agency.

On May 3, 1955, Martin Motors and defendant entered into an agreement whereby Martin Motors employed defendant as its general manager at a salary of $100 per week and agreed to give to defendant fifty per cent of the stock of Martin Motors when current assets exceeded current liabilities by $15,-000 and an additional five per cent when the current assets exceeded the current liabilities by $25,000. The stock was to be deposited with Home Savings Bank as escrow agent. The current assets never did exceed the current liabilities by the requisite amount while defendant was with Martin Motors, and the stock was never actually deposited in escrow with Home Savings Bank.

The automobiles furnished to Martin Motors were sent in under sight draft drawn on Martin Motors. The money to pay these drafts was obtained from Home Savings Bank on notes of Martin Motors. It was the practice of the bank to demand the accommodation indorsements of two of the officers of Martin Motors on these notes. Before the defendant took over as general manager, the plaintiff customarily signed the Martin Motors' notes as accommodation indorser. However, at one of the early meetings between plaintiff and defendant, sometime in late April or early May of 1955, the plaintiff explained that he could not come up to Milwaukee from Chicago, his residence, every time a shipment of new cars came to Martin Motors. It was agreed by defendant that to "accommodate" plaintiff (the word carefully emphasized in defendant's testimony), defendant would make the notes for the agency and place his personal indorsement thereon as required by the bank. The extent of this "accommodation" was to relieve the plaintiff of the necessity of making the numerous trips from Chicago to Milwaukee. Accordingly, a number of notes similar to the first ten here in suit were made and indorsed by defendant. These first ten notes, on which plaintiff's indorsement does not appear, pertained to automobiles shipped to Martin Motors. The eleventh note, on which plaintiff's indorsement does appear, pertained to a loan granted on security other than new automobiles.

On July 16, 1955, before the first of the notes here sued upon was executed and issued, plaintiff gave to the Home Savings Bank a document reading:

"Home Savings Bank
2200 North Third Street
Milwaukee 12, Wisconsin

"Gentlemen:

"Whereas the undersigned may have, from time to time, certain credits in an account or accounts or securities lodged with your institution and; whereas, the undersigned is desirous of obtaining credit extension or accomodation [sic] in the future from time to time, for various businesses and otherwise in which he is engaged in Milwaukee, Wisconsin, including Martin Motors, Inc., the undersigned

does hereby authorize you to transfer and set over to yourself, at your sole discretion, any credits which may accrue to my benefit on deposit with you or otherwise as a result of any credit extension to me or any agent or corporate entity on my behalf, to indemnify yourself up to an amount not exceeding $50,000.00

"Orlando P. Colamatteo"

In September, 1955, defendant severed all connection with Martin Motors. On or about May 11, 1956, Home Savings Bank indorsed the eleven notes to plaintiff, specially and without recourse. The evidence shows that plaintiff, by periodic payments extending beyond May, 1956, paid to the bank all amounts due on the notes.

■ Defendant's first defense is that plaintiff was a person accommodated on all of the notes signed by defendant as an accommodation indorser. At the time when the notes were issued to payee, Home Savings Bank, plaintiff's signature appeared only on the eleventh note. An acommodation party is not liable to the person accommodated. Section 116.69, Wis.Stats. (Sec. 64, N.I.L.); 5 U.L.A. § 29, annotation 81. The person accommodated by an accommodation party may be someone not a party to the negotiable instrument when it was issued. Section 116.34, Wis.Stats. (Sec. 29, N.I.L.), speaking of " * * * some other person * * *"; Schwenker v. Teasdale, 1931, 206 Wis. 275, 239 N.W. 434; 11 C.J. S. Bills and Notes § 740. Parol evidence is admissible to show that a negotiable instrument is accommodation paper and to identify the accommodation party and the person accommodated. Breitengross v. Farr, 1898, 100 Wis. 215, 75 N.W. 893; Sec. 116.34, Wis.Stats.; 5 U.L.A. § 29, annotations 55, 93; Sec. 116.69, Wis. Stats.

■ However, the evidence falls far short of showing that plaintiff was a person accommodated by defendant's signature. All of the proceeds of the loan went directly to Martin Motors for use in the ordinary conduct of its business affairs. None of the proceeds went to plaintiff. After defendant became the general manager of Martin Motors, the plaintiff ceased active management of the agency. If the agency prospered, defendant would emerge the majority stockholder. He had compelling reason to lend his name to Martin Motors. While no doubt plaintiff was interested in Martin Motors, defendant had a direct financial interest in the agency and was general manager at the time the notes were executed. The court finds that defendant was an accommodation indorser for the accommodation of Martin Motors and not for the accommodation of plaintiff.

■ An attempt was made by defendant to establish the existence of certain allegedly fraudulent misrepresentations made by plaintiff with reference to the lease held by Martin Motors on its showroom and with reference to stock ownership in Martin Motors. Defendant contends that plaintiff represented to him that he, plaintiff owned all of the stock in Martin Motors. This is denied by plaintiff. The evidence shows that although plaintiff personally owned only one-quarter to one-third of the stock, he was the manager of the syndicate or group that did own all the stock. In this position plaintiff controlled all the stock. Before defendant signed any of the notes here in suit, he was thoroughly familiar with Martin Motors' lease situation and had made personal inspection of the agency. Defendant was an experienced automobile agency manager. The representations were not relied upon by defendant in his indorsement and guaranty of the notes and did not pertain to defendant's indorsement and guaranty. The court finds that the defense grounded upon alleged misrepresentations is without merit.

Defendant also attempted to show an oral agreement by plaintiff to save him harmless on his indorsement and guaranty of the notes. It is unnecessary to discuss the enforceability of any agree-

ment of this sort[1], because the court finds that there is no evidence that any such agreement was made. The conversations upon which defendant bases his contention were nothing more than general words of encouragement and reassurance, mere sales talk.

■ In defendant's answer there was an indication that defendant might attempt to show that the plaintiff was a co-guarantor of the first ten notes, on a special guaranty on a separate document with the Home Savings Bank as guarantee. Defendant's theory would then be that plaintiff acquired the notes upon enforcement of this contract of guaranty and any recovery should be limited to contribution between co-guarantors. However, defendant abandoned this approach in his final briefs. The court is of the opinion that the evidence is insufficient to bring up this interesting legal question. Defendant has not shown that plaintiff was a co-guarantor. From the evidence received, it appears that plaintiff did not acquire the notes under the agreement with Home Savings Bank of July 16, 1955. That agreement authorizes a set off of credits in plaintiff's accounts with Home Savings Bank against debits to the accounts of Martin Motors. The evidence shows that plaintiff acquired the notes as a result of actual payments over a period of months, not by set-offs. Certain "guaranties" of plaintiff to Home Savings Bank were alluded to in the testimony, but none, other than exhibit 12 were introduced into evidence. The court finds that defendant has failed to prove that the plaintiff was a co-guarantor of the first ten notes.

■ The evidence shows that the payee of the notes, Home Savings Bank, was a holder for value. Section 116.31, Wis.Stats. (Sec. 26 N.I.L.). The plaintiff paid to Home Savings Bank the amount due on the notes, and is, therefore, also a holder for value under Sec. 116.34, Wis.Stats. (Sec. 29 N.I.L.) Section 116.30, Wis.Stats. (Sec. 25 N.I.L.).

Plaintiff is entitled to recovery on the first ten notes against the defendant for the amount due on the face of the notes together with the interest specified thereon.

■ On the eleventh note, plaintiff sues defendant for contribution. The evidence shows that plaintiff, defendant, and William Colamatteo were co-accommodation indorsers, having signed as co-sureties, on the eleventh note and that their liability to one another was intended to be joint and not successive. Section 116.73, Wis.Stats. (Sec. 68, N.I.L.). Plaintiff is entitled to contribution from the defendant for one-third of the amount paid by plaintiff to Home Savings Bank, as prayed for by plaintiff. See Kiel v. Choate, 1896, 92 Wis. 517, 67 N.W. 431; 11 C.J.S. Bills and Notes § 756.

Counsel for the plaintiff is directed to prepare an order for judgment and judgment in conformity with this opinion, submitting them to counsel for the defendant for approval as to form and arithmetical computation only.

---

1. See section 241.02(2), Wis.Stats., providing:
    "In the following case every agreement shall be void unless such agreement or some note or memorandum thereof expressing the consideration, be in writing and subscribed by the party charged therewith: * * *
    "(2) Every special promise to answer for the debt, default or miscarriage of another person. * * *"