FARMERS NATIONAL BANK, APPELLEE, V. L. D. OHMAN ET AL., APPELLANTS.

FILED JULY 18, 1924.   No. 22873.

1. **Bills and Notes:** ACCOMMODATION MAKER. One to be an accommodation maker of a promissory note must not receive any benefit or consideration directly or indirectly by way of the transaction of which the note was a part, and the transaction must be one primarily for the benefit of the payee.

2. ————: CONSIDERATION. "A consideration moving to one of several joint makers of a promissory note is good as to all." *First Nat. Bank v. Golder*, 89 Neb. 377.

3. **Evidence:** PAROL EVIDENCE. A promissory note, in the usual commercial form, is a complete contract in itself, and its terms cannot be varied or contradicted by parol evidence.

4. **Banks and Banking:** AGENCY. One whose note to a bank is past due, and who is required to procure additional security in order to obtain renewal thereof, in so doing is not acting as the agent of the bank, even if the bank's officers suggest that he procure a certain person.

5. ————: AUTHORITY OF OFFICERS. In an action on a promissory note by the payee against the maker, the latter set up as a defense that at the time he made the note he was orally promised by the president and the cashier of the bank that he was not to be liable thereon. The making of such a promise. if it could be proved, was not, under the facts disclosed, within the apparent scope of these officers' authority, and is not binding on the bank, unless specially authorized, or, with knowledge of the fact, approved by the bank's directors.

6. **Bills and Notes:** DEFENSES. An agreement pleaded as a defense to an action on a promissory note, brought by the payee bank,

that at the time of its execution and delivery it was agreed between the payor and the payee that the note was to be used for the sole purpose of enabling the payee bank to satisfy the demands of the national banking authorities then being made upon it, does not constitute a defense; the fraud, if any, being in this agreement, and not in the note, nor in the consideration for it.

APPEAL from the district court for Stanton county: ANSON A. WELCH, JUDGE. *Affirmed.*

*George A. Eberly,* for appellants.

*D. C. Chase* and *Hugo M. Nicholson, contra.*

Heard before MORRISSEY, C. J., DAY, GOOD and THOMPSON, JJ., and REDICK, District Judge.

THOMPSON, J.

The plaintiff alleges, in substance, as a basis of recovery, that it is a corporation, organized and doing business at Pilger, Nebraska, as a national bank; that on the 26th day of April, 1921, the defendants executed and delivered to it their promissory note, in the usual commercial form, for the sum of $7,500, drawing interest at 10 per cent. per annum, due six months after date; that the same was long past due and that no part thereof had been paid, and prayed judgment accordingly.

The defendant L. D. Ohman answered, in substance, alleging, first. a general denial; second, that the note was signed by the defendant without consideration and solely for the accommodation of the payee named therein.

The defendant M. D. Ohman for answer alleged, in substance, first. that the note was signed by the defendant solely for the accommodation and benefit of the payee and wholly without consideration received by the defendant, or parted with by plaintiff; second. that in signing the note she did so pursuant to, and relying upon, an oral agreement made and entered into by and between the plaintiff and herself, and in her behalf; that the agreement constituted the condition upon which the note was signed and

delivered; that it was agreed that the note was for the purpose of aiding and assisting plaintiff, and solely to enable plaintiff to satisfy the demands of the bank examiner and the national banking authorities, then being made upon said plaintiff; that she thus signed the note with the defendant L. D. Ohman wholly and solely upon the condition that it was to be accommodation paper for the purpose named in the oral agreement; that the plaintiff, in consideration, agreed with her that the aforesaid note was to be used solely for the purpose of satisfying the bank examiner and national banking authorities; that the defendant would not be required to pay the note and that there should be no recourse to her by the plaintiff. The third paragraph is but a repetition of the first and second.

It will be noticed that this answer of M. D. Ohman, by not denying, admits every allegation in the petition well pleaded, and seeks to avoid the effect or consequences by a plea that the same is accommodation paper, signed by her without consideration and for the sole benefit of the plaintiff.

The plaintiff for reply to each of the answers filed a general denial.

The case came on for trial and at the close of defendants' evidence plaintiff moved for an instructed verdict in its favor in the sum of $8,233.36, the amount of the note and interest to that date. Motion sustained, and the court instructed the jury as follows: "You are instructed by the court to return a verdict for the plaintiff in this case against both defendants in the sum of $8,233.36." Defendants jointly except, and jury return a verdict for the amount. Judgment by the court entered thereon. Defendants separately file motion for a new trial, alleging as grounds therefor: "That the court erred in instructing the jury to render verdict in favor of plaintiff: that the verdict is not sustained by the evidence and is against the weight thereof; that the verdict is contrary to law." Motion overruled. Case appealed by the defendants, M. D. Ohman giving her separate supersedeas bond.

The instruction quoted in defendants' brief is not found in the transcript, but is taken from statements made by the court, as shown by the bill of exceptions, leading up to the giving of the instruction heretofore quoted.

From the pleadings it will plainly be seen that the main issue raised thereby, so far as M. D. Ohman was concerned, was as to whether or not the note sued on was as to her an accommodation note given for the primary benefit of the payee, and without consideration directly or indirectly running to her from the payee; the other facts pleaded in her answer, as to the desire on the part of the bank to satisfy the bank examiner and national banking authorities, being simply an amplification of the plea necessary in a case of accommodation paper. The pleading is without an allegation of intentional fraud, deceit, or charge of wrong-doing as to any of the parties. In considering the effect of a directed verdict, we are not unmindful of the rule announced by us in *O'Hara v. Hines*, 108 Neb. 74.

Defendant M. D. Ohman is the mother of defendant L. D. Ohman, and we shall refer to them as mother and son, respectively.

The evidence, in substance, further shows that at the time of the execution and delivery of the note in question the plaintiff bank still held a past-due note for $5,000 signed by the son and his mother; also an enforceable note signed by the son alone in the like sum of $7,500; that the national bank examiners had objected to the plaintiff bank longer carrying the latter note with only the signature of the son, and requested plaintiff bank to demand additional security, which it did of him at his home in Stanton county, telling him at the time that the bank examiner had been at the bank, examined the notes, and demanded that his $7,500 note be paid, or an additional signer thereon obtained; that he said he did not like to ask his mother to sign the note with him, as debts worried her; that Chace, president of the bank, said: "We will give you plenty of time, and you can renew the note from time to time so that this will give you a chance to pay it, and your mother need not be troubled;"

that at the same time the note in question was prepared, signed by the son and left with him, he sent the note to her, and, as shown by his evidence, stated to her in a letter submitting the same: "I wrote to her that the examiner was demanding another signature on the paper, and that I had the promise of Mr. Chace and Mr. Larson that if mother would sign the note with me she would not be troubled for payment, that they would give me three or four years to work it out myself."

After receiving the letter and the note, the mother signed the latter, returned it to the son, and he delivered it to the bank, at which time he was told that the bank examiner had been there and that the bank had informed him that they were expecting the mother to sign the note with him, and the examiner said he would then let the matter rest until the new note was executed and returned to the bank, or words to that effect. That afterwards, and just before the note was due, the bank officials went to the son's farm and requested that he secure the $5,000 note, and the note in question, interest on each, and $600 interest unpaid on the note renewed, amounting in all to the sum of about $14,000. That the son declined to secure the said amount on his lands for the reason that he wanted to make some other disposition of them; and that they then went to the mother to have her secure the $14,000 and she said she would want some days to consider it; that she afterwards informed the bank that she had concluded not to mortgage her farm, and further said, at any rate she thought they were not going to trouble her.

In this case, the examiners acted as duty demanded, the bank carried the demand to the maker of the note, and requested payment thereof or another name. The mother had previously signed one note with the son for $5,000 payable to the bank; and the most natural thought to come to both the bank officers and the son was to have the mother go on the note with the son. And just as natural for the officers to say to the son, it is security we are after, and if you will get your mother to sign the note with you

we will give you time to make the payments yourself if you desire, and we will not trouble the mother. The son so understood it and a fair construction placed on the letter to the mother will so interpret the language used.

We first notice defendants' contention that the note in question was given without consideration as an accommodation note. They urge that the plaintiff bank parted with nothing of value when the note in question was received. This contention cannot be sustained. Induced by the receipt of it, plaintiff bank credited the son upon its books with $7,500 as payment on the original note, and by extending time of payment thus relinquished its right to sue on this note *pro tanto*. Also, the original consideration for the note renewed was sufficient. We consider the law to be correctly stated in 8 C. J. 217, sec. 352, as follows:

"The existing debt may already be represented by the maker's own bill or note, and the surrender of such instrument will be a good consideration for the new obligation, and this is so, although the old note is not surrendered, provided there was no agreement to return the old note, and where the old note has not been transferred to one other than the payee of the new note. So a note given in renewal of the maker's note is based on a consideration, and in such case the consideration for the original paper supports the renewal."

In *Perrin v. Royal*, 42 Ind. 132, suit was brought on a promissory note given in renewal of six others. In the opinion the court say: "The old notes, or the debts evidenced thereby, furnished an ample consideration for the execution of the new, whether the old ones were surrendered at the time, or not."

When the mother signed the note, the consideration for it on the part of the son was a sufficient consideration as to her, as: "A consideration moving to one of several joint makers of a promissory note is good as to all." *First Nat. Bank v. Golder*, 89 Neb. 377. On page 381 the following instruction given was approved by us: "If the jury believe from the evidence that the defendant Hopper signed

said note at the request of one of the other signers, Huntington, then in that case the consideration received by the other signer, Golder, would be a sufficient consideration for the defendant Hopper for signing said note, and the defendant Hopper in that case would be liable for the full amount of said note and interest thereon." This case is as to facts pleaded similar to the instant case, as is shown by paragraph 4, page 379.

In *Neal v. Wilson,* 213 Mass. 336, a check was given by third persons to a bank without consideration, at the solicitation of the cashier, and immediately passed to the credit of a depositor's over-due account, to make the account whole. Held, the check was given for the accommodation of the depositor rather than of the bank. Accord, *Nalitzky v. Williams,* 237 Fed. 802; *Skagit State Bank v. Moody,* 86 Wash. 286; *German American State Bank v. Watson,* 99 Kan. 686.

Then the defendants admitted, and it is made a part of the evidence, that the note in suit was a renewal of a note of the same face value which had been given for full value. This admission alone would and did render nugatory the contention that it was an accommodation note, and took the case out of the rule announced in *Citizens Bank v. Fredrickson,* 83 Neb. 755, and brought it within the rule announced in *Security Savings Bank v. Rhodes,* 107 Neb. 223, especially the rule announced in *Greenway v. Orthwein Grain Co.,* 85 Fed. 536, which was followed and approved therein. One to be an accommodation maker of a note must not receive any benefit or consideration directly or indirectly by way of the transaction of which the note was a part. Thus it will be seen that the note was signed and delivered by each of the defendants for a consideration, and in no legal sense an accommodation note, and on that plea the defense fails.

Defendants each, also, rely upon an alleged oral agreement entered into betweeen themselves and James R. Chace and Robert Larson, president and cashier of plaintiff bank, respectively, "to the effect that she, the mother, would not

be called upon to pay the note, that it was to be used solely for the purpose of satisfying the demands of the bank examiner." The note is a complete contract in itself, and its terms cannot be varied or contradicted by extraneous parol evidence. *Van Etten v. Howell,* 40 Neb. 850; *Western Mfg. Co. v. Rogers,* 54 Neb. 456; *Security Savings Bank v. Rhodes,* 107 Neb. 223; *German American State Bank v. Watson, supra; Skagit State Bank v. Moody, supra.* This note was not, and was not intended to be, a sham as to any of the contracting parties; therefore this case is distinguishable from the case of *Coffman v. Malone,* 98 Neb. 819. The fact is that no communication, oral or written, ever passed between Chace or Larson, or the bank, and the mother prior to her signing the new note, or in reference to it. She lived in Bellevue, Nebraska, some distance from Pilger, the home of the plaintiff bank, Chace, Larson, and the son. The only request for her signature was the contents of the letter written to her by the son.

Counsel for defendants argue that L. D. Ohman acted as agent for the bank in securing M. D. Ohman's signature. We hold that one whose note to a bank is past due, and who is required by the bank to procure additional security in order to obtain a renewal thereof, in so doing is not acting as the agent of the bank, even if the bank suggests that the debtor secure a person by it designated. Thus the evidence does not sustain this contention of defendants' counsel.

Furthermore, Chace and Larson could not bind the bank to such an agreement, which, if made by them, was clearly outside the scope of their authority. *Security Savings Bank v. Rhodes, supra; Bank of United States v. Dunn,* 6 Pet. (U. S.) 51. It is not within the recognized duties of managing bank officers to promise persons whose names appear upon commercial paper of the bank that they are not to be held liable thereon, in plain contradiction of the obligation expressed by the paper.

There is no evidence that the bank knew of the agreement, if any there was. Thus this case is distinguishable from *First Nat. Bank v. Felt,* 100 Ia. 680, relied on by

defendants.    There the directors ratified the arrangement;
the approval of the directors of the plaintiff bank in this
instant case is wholly lacking.

The defendants insist that this action is one coming
under the rule of law that, where a contract is based on
an illegal consideration, the court will leave the parties
where it finds them and will not grant relief to either.    It
is considered by us that defendants have not pleaded nor
proved such a case.    However, *arguendo,* if all that the
defendants have pleaded, with fraud and intentional de-
ceit added, as to the purpose of the execution and delivery
of the note as a means of misleading and deceiving the
government authorities, as to its true status, was admitted
or proved, it would not amount to a defense.    In *Skagit
State Bank v. Moody,* 150 Pac. 425 (86 Wash. 286) the
court, in deciding a similar case, said:    "An oral under-
standing between the parties, that a note given by a direc-
tor of the bank in payment of overdue interest on another
note, to comply with the demands of the state bank exam-
iner, should be held only until after the examination of the
bank and then returned to the director, does not invalidate
the note, even between the original parties, since the fraud
was in the collateral, oral understanding, not in the note
itself or in the consideration."    The reasoning is logical
and is by us approved.    In *German American State Bank
v. Watson, supra,* we read as follows:    "The maker of a
note cannot defend an action thereon by showing that it
was executed without benefit to him, under an agreement
exempting him from liability, in order to enable the bank
to which it was payable to make an additional loan to a
customer who had already borrowed to the limit allowed
by law, for the reason that having voluntarily signed the
note in order that the examiner might believe it to be an
asset to the bank he ought not to be permitted to deny it
that effect."

Courts prefer and should seek to find a legal rather than
an unlawful motive for the acts of the parties litigant.

The court did not err in directing the jury to return a

verdict in favor of the plaintiff. The record discloses no conflict in the evidence for the jury to decide. The questions arising were purely questions of law for the court, and this justified the trial court in directing the verdict and entering judgment thereon.

From a careful consideration of the admissions in the respective answers, and made at the trial, together with the evidence, and the law governing each and all questions presented, it is found and considered by us that the judgment of the trial court is correct; that it did not err in instructing the jury as it did; that the verdict is sustained by the law, and warranted by the evidence; that the judgment rendered should be and is in all things

AFFIRMED.

Note—See Banks and Banking, 7 C. J. p. 524, sec. 122; p. 559, sec. 164; Bills and Notes, 8 C. J. p. 211, sec. 343; p. 253, sec. 400; p. 786, sec. 1046 (1925 Ann.) ; Evidence, 22 C. J. p. 1089, sec. 1443.