COZAD STATE BANK, APPELLEE, V. WILLIAM MCLAUGHLIN, APPELLANT.

FILED DECEMBER 21, 1934. No. 29093.

*Frank M. Johnson,* for appellant.

*Cook & Cook, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and MUNDAY, District Judge.

GOSS, C. J.

Defendant appeals from a judgment on a note. The verdict was instructed by the court at the end of evidence on both sides.

The note was a demand note for $4,000, made by defendant in favor of plaintiff and dated November 21, 1932. Defendant had first made a like note in favor of plaintiff in October, 1926. About every six months the existing note would be taken up by a renewal signed by defendant and delivered to plaintiff, who was the payee in all of them.

Defendant pleaded that the original note and all renewals, of which the note in suit was the culmination, had been without any consideration; that C. P. Hord, president and managing officer of the bank, induced defendant to sign the first note by representing the bank to be in good financial condition but having certain slow paper or notes which the banking department demanded to be removed from the bank, that the signing of the note "would be an accommodation to the bank and was only intended to enable said plaintiff to remove for the time being the certain notes which had been objected to by the department of trade and commerce; that defendant would never be called upon to pay either the principal or interest on said note."

Defendant further pleaded that, when the first note was given, he asked Hord to have the bank give him its note or memorandum to show that there would be no liability on defendant to pay his note to the bank. Hord stated this could not be done because, if the bank gave defendant a note, it would have to be set up as a bank liability. So C. P. Hord offered to give and did give plaintiff his own personal note, to be held by defendant and returned when defendant's note was returned by the bank. Defendant further alleged that, at Hord's own suggestion, the latter left with defendant 25 shares of stock of plaintiff bank and 12 shares of stock of the T. B. Hord Grain Company, but that this stock was returned to Hord in April, 1930, when a change in the ownership and management of the bank was contemplated.

The evidence showed that defendant had been president of plaintiff bank, but had sold out in 1918 and had re-

moved to California in 1920. He resided there in 1926 when Mr. Hord called upon him and induced him to make the first note of which the note sued upon is the last renewal. Hord exchanged notes with him and a few days later sent him the stock referred to in the pleadings. After various renewals and exchanges of notes the stock was given up to Hord, but defendant still retains the last Hord note. The evidence further shows that, when the first note of defendant was put in the bank, C. P. Hord took out of the bank the certain notes that had been criticized by the banking department and to the extent of its face value substituted defendant's note. He claims to have expected to collect the notes taken out and with the proceeds to pay his note given to defendant, and the fund would, in turn, enable defendant to pay his note held by the bank. But this never happened and the suit resulted when, some time after the bank changed hands, the new management desired payment or security for the McLaughlin note. Defendant testified in substance and effect what he pleaded.

Defendant argues that the question should have been submitted to the jury to determine the weight and sufficiency of the evidence on the question as to whether McLaughlin was not the accommodation maker of the note for the benefit of the payee bank and therefore not liable. Section 62-201, Comp. St. 1929, says: "Every negotiable instrument is deemed *prima facie* to have been issued for a valuable consideration." Section 62-202, Comp. St. 1929, says: "Value is any consideration sufficient to support a simple contract." Section 62-206, Comp. St. 1929, says: "An 'accommodation party' is one who has signed an instrument as maker, drawer, acceptor or indorser, without receiving value therefor, and for the purpose of lending his name to some other person." It is undisputed in the evidence that C. P. Hord received notes from the assets of the bank and gave the bank in lieu thereof McLaughlin's note, for which he gave his own note, secured by a pledge of some certificates of

stock. McLaughlin knew he was lending his name to some other person and that he was receiving a valuable consideration when he took Hord's note and the pledge of the stocks. He renewed his note every six months and took a renewal of the Hord note each time for six years, in the meantime surrendering the stock pledged as security.

Treating directly the subject of consideration it is said: "If A, as an accommodation to B, and in consideration of his promise of indemnity, gives his note to C for a debt owing to the latter by B, the note of A does not lack consideration. B's promise to A is a sufficient consideration to support A's promise to C." *Murphey v. Illinois Trust & Savings Bank,* 57 Neb. 519. There the bank sued Murphey and had judgment against him on a note given by him to the bank. He executed the note (with others) at the request of Warren & Co., which copartnership was indebted to the bank, in pursuance of an agreement between himself and Warren & Co. that the latter would indemnify him for so doing; that is, they would repay him whatever money he paid the bank on the notes. The court said: "The effect of this evidence is that Murphey executed the note in suit as an accommodation for Warren & Co. We do not think he executed the note without consideration." The judgment for the bank was affirmed.

In *Farmers Nat. Bank v. Ohman,* 112 Neb. 491 (Thompson, J.) it was held: "One to be an accommodation maker of a promissory note must not receive any benefit or consideration directly or indirectly by way of the transaction of which the note was a part, and the transaction must be one primarily for the benefit of the payee."

We are of the opinion that, under the evidence, plaintiff bank was not an accommodation payee of the note and defendant was not an accommodation party, because of the consideration moving from C. P. Hord to him as the maker of the note.

Defendant contends that the cause should have been

submitted to the jury to determine the probative force of the evidence tending to prove. that the note was for the accommodation of the bank. He cites many cases wherein such questions have been submitted to the jury. The last case cited is the recent one, *Luikart v. Meierjurgen,* 124 Neb. 816, where the case was submitted to the jury, the verdict was for defendant and the judgment was affirmed here. In that case no consideration whatever moved to the maker of the note. Here the maker admitted the receiving of the consideration but sought to avoid it by charging that the bank was the accommodation payee. To make an issue to be submitted to the jury he relied on charging the bank through C. P. Hord as its agent. To do this it had to appear that Hord had authority to bind the bank to a promise, claimed by defendant but denied by Hord, that defendant would never be called on by the bank to pay the note. There is no evidence of such authority. "The president of a bank has no authority, springing from his official position, to make an agreement that the liability of a party on commercial paper payable to the bank shall never be enforced." *Security Savings Bank v. Rhodes,* 107 Neb. 223 (Flansburg, J.). In that case judgment for plaintiff was entered on the pleadings. To the same general effect is *Farmers Nat. Bank v. Ohman,* 112. Neb. 491. In that case the court instructed the jury for plaintiff at the close of the evidence. When Hord got the note from defendant he was president of the bank, and, while he owned a considerable portion of the stock, he did not own it all. There is no evidence that he had authority to bind the bank to his promise (if made) to McLaughlin that McLaughlin would never be called upon by the bank to pay the note. As was said in the syllabus in *Farmers Nat. Bank. v. Ohman,* 112 Neb. 491:

"In an action on a promissory note by the payee against the maker, the latter set up as a defense that at the time he made the note he was orally promised by the president and the cashier of the bank that he was not to be liable

thereon. The making of such a promise, if it could be proved, was not, under the facts disclosed, within the apparent scope of these officers' authority, and is not binding on the bank, unless specially authorized, or, with knowledge of the fact, approved by the bank's directors.

"An agreement pleaded as a defense to an action on a promissory note, brought by the payee bank, that at the time of its execution and delivery it was agreed between the payor and the payee that the note was to be used for the sole purpose of enabling the payee bank to satisfy the demands of the national banking authorities then being made upon it, does not constitute a defense; the fraud, if any, being in this agreement, and not in the note, nor in the consideration for it."

The foregoing treats the heart of the case sought to be made by defendant. There are thirty assignments of error. We think those not embraced within our discussion constitute alleged errors of the court in excluding answers to questions and offers of evidence, which if admitted would not change the result, and that these errors, if any, were not really prejudicial to defendant.

The judgment of the district court is

AFFIRMED.