STOCKMENS STATE BANK, APPELLEE, v. LEWIS POLLAT: ANNA S. DRAKE, APPELLANT.

FILED JANUARY 24, 1936. No. 29490.

*Hoagland, Carr & Hoagland,* for appellant.

*Halligan, Beatty & Halligan* and *Lowell C. Davis, contra.*

Heard before GOSS, C. J., ROSE, GOOD, DAY, PAINE and CARTER, JJ., and CHASE, District Judge.

ROSE, J.

This is an action on a promissory note for $1,900, dated April 16, 1932, and payable 60 days thence. The Stockmens State Bank, payee, commenced the suit, but S. D. Ralston, present owner of the note, was substituted plaintiff pending litigation. The note was executed and delivered by Lewis Pollat and Anna S. Drake, defendants, and contains this provision:

"Each hereby pledges his or her separate property and estate for the payment of this note."

In a separate answer defendant Anna S. Drake pleaded in substance that the note was a renewal of a 2,500-dollar note reduced by payments to $1,900; that no consideration for the execution of either note ever passed to her; that her signatures were procured to make the notes bankable for the accommodation of the bank with the assurance of S. D. Ralston, its president, that no liability for payment would attach to her; that she was a married woman and did not bind, or intend to bind, her separate estate. In addition to a general denial, the reply to the answer contained the allegation that the answering defendant executed the note in suit for a valuable consideration, agreeing to bind herself and her separate estate for payment.

Upon a trial of the issues the district court gave the jury a peremptory instruction in favor of plaintiff. From a judgment for $2,189.50 against both defendants on the directed verdict, they appealed.

The controlling question presented by the appeal is raised by the assignment that the district court erred in directing a verdict for plaintiff, because, as defendant Anna S. Drake

contends, she made a defense for the consideration of the jury on the issue that she signed the note in suit without any consideration as an accommodation to the payee, the Stockmens State Bank, within the meaning of the following rules of law:

"An accommodation maker of a promissory note is one who has signed without receiving value therefor and for the purpose of lending his name to some other person. Comp. St. 1929, sec. 62-206." *Luikart v. Meierjurgen,* 124 Neb. 816, 248 N. W. 379.

"In an action on a promissory note, the defense that the note is given for the accommodation of the plaintiff and without consideration may be established by parol evidence." *Bennington State Bank v. Petersen,* 114 Neb. 420, 207 N. W. 673.

The following facts are shown by the evidence without dispute: Lewis Pollat and Anna S. Drake, defendants, are brother and sister. In the summer of 1930 Pollat negotiated with S. D. Ralston, president of the Stockmens State Bank, for a bank loan of $2,500 with which to purchase the stock and equipment of the Cozad Auto Company, and was distinctly told that an offer of a chattel mortgage on that property, if purchased, would not be accepted as security and that a bankable note with two signers would be required as a condition of the loan. Pollat asked Ralston if his sister would do, if she signed a note with him, and was told that she would. Pollat afterward called on her and asked her if she would sign with him the original note for $2,500. Within two or three days she went to the bank and signed the note which had been previously signed by her brother. He received in cash from the bank $2,500 and with it paid the purchase price of the stock and equipment of the Cozad Auto Company. There were several renewal notes, each signed by both defendants. The last of the series was the note in suit for $1,900, the debt having been reduced by payments to those figures.

Pollat made no defense for himself. His sister called him as a witness. On cross-examination he admitted he

told Ralston, before the loan was made, that his sister "would come down to see him and sign the note." Defendant Anna S. Drake was a witness in her own behalf and said she had a conversation with her brother about signing a note with him and, pursuant thereto, went to the bank and conversed with Ralston on the subject. Asked what the conversation was, she testified as follows:

"I don't remember just the exact words, but my brother had asked me to sign some notes, and Mr. Ralston asked me if I would, and I asked him if I would be liable for the note and he said I wouldn't be, and he said he could not let my brother have the money because the banking law required two signatures and he wasn't taking a chattel mortgage so he wanted two signatures on the note. So I told him if that was the case I would sign with my brother."

By the same witness there was other testimony of a similar import to the effect that Ralston said her brother would pay the note; that she would not be liable thereon; that the bank required two signatures to make it bankable and satisfactory to the banking department. Her testimony, in view of facts shown without dispute, did not present a question for the jury on the issue that she signed the note without consideration for the accommodation of the bank. Ralston did not suggest Anna S. Drake as a signer. Her name was proposed by her brother and was acceptable. He asked her to sign the note. Both defendants knew in advance that Pollat could not procure the loan by signing a note and securing it by a chattel mortgage on the property to be purchased; that a bankable note with two signatures was required; that Pollat could not borrow the money without such a note. His sister by her signature enabled him to procure from the bank $2,500 in cash. In the note which she signed she promised to pay the debt evidenced by it and in effect contracted with reference to her separate estate. She went further and signed a property statement, showing a valuable interest in real estate, for the purpose of procuring credit with the bank for her com-

mercial paper. After she had been reminded of her liability and notified to meet her obligation she deeded her interest in her real estate to her husband. A fatal defect in the defense of accommodation maker was the failure to prove that the transaction was primarily for the benefit of the payee—the bank. In a former case it was ruled:

"One to be an accommodation maker of a promissory note must not receive any benefit or consideration directly or indirectly by way of the transaction of which the note was a part, and the transaction must be one primarily for the benefit of the payee." *Farmers Nat. Bank v. Ohman,* 112 Neb. 491, 199 N. W. 802.

The record shows conclusively that the person primarily benefited by the transaction was Pollat, who procured $2,500 in cash by virtue of his sister's signature. Without it the bank would have kept its money and Pollat would not have procured his loan. The evidence will not admit of any other conclusion. Under the circumstances, consideration moving directly to the sister was not necessary to a binding obligation on her part. The law has been stated as follows:

"A consideration moving to one of several joint makers of a promissory note is good as to all." *First Nat. Bank v. Golder,* 89 Neb. 377, 131 N. W. 600. Followed in *Farmers Nat. Bank v. Ohman,* 112 Neb. 491, 199 N. W. 802.

A bankable note was required by the bank as a condition of the loan. Both signers understood that in advance. An unsecured note bearing the signature of Pollat alone as maker was not bankable. The mere additional signature of an accommodation maker without liability would not supply the defect. The evidence is insufficient to sustain a verdict in favor of Anna S. Drake on the issue of accommodation maker. There was therefore no error in the refusal to submit that question to the jury. With the controlling issue thus determined on appeal, there is no prejudicial error in the proceedings and judgment of the district court.

AFFIRMED.