NORTHWESTERN BELL TELEPHONE COMPANY, A CORPORATION, APPELLANT AND CROSS-APPELLEE, v. WOODMEN OF THE WORLD LIFE INSURANCE SOCIETY, A CORPORATION, APPELLEE AND CROSS-APPELLANT.

199 N. W. 2d 729

Filed August 4, 1972. No. 38289.

Edward Sklenicka, Joseph H. McGroarty, Warren G. Austin, and William A. Claerhout, for appellant.

Gaines, Spittler, Neely, Otis & Moore, for appellee.

Heard before SPENCER, SMITH, and NEWTON, JJ., and CHADDERDON and C. THOMAS WHITE, District Judges.

C. THOMAS WHITE, District Judge.

The plaintiff sued in the district court on two causes of action: On a contract to indemnify and on a breach of contract to construct. The cause was tried to a jury, and the jury found for the plaintiff on a combined verdict in the amount of $74,554.75. Plaintiff appeals and defendant cross-appeals.

The plaintiff is a corporation engaged in the operation of telephone and related communication facilities, in interstate and intrastate commerce. Its rates are generally fixed by the Federal Communications Commission and other state agencies. Its business records are kept in a form and according to detailed standards fixed by the Federal Communications Commission. The regulations prescribed formulas for cost allocation of all services, labor, materials, and overhead, primarily for the purpose of determining rates.

The defendant is a fraternal benefit society with its principal activity the issuance of contracts of insurance on its members.

This action concerns the construction of the Woodmen of the World Building on Block 116 of the Original City of Omaha, Nebraska. Block 116 is bounded on the north by Douglas Street, on the south by Farnam Street, on the west by 18th Street, and on the east by 17th Street. As part of the original plat and dedication, an alley existed in Block 116, running east and west between 17th and 18th Streets. The alley was 20 feet in width, 264 feet long, and buried beneath it were a sewer and electric power cables and conduits containing telephone facilities belonging to the plaintiff.

The defendant, prior to the contract in question, owned the entire south half of Block 116. and parts of several lots to the north of the alley, and held an option to purchase the remaining portions of the alley from other owners of property in Block 116, so that in the event of vacation of the alley, defendant would own the entire vacated alley. It was the plan of the defendant to build and it ultimately did build an office building on the south half of Block 116 and the vacated alley.

As a condition for the vacation of the alley, the planning commission of the City of Omaha required defendant to make provisions for the maintenance of the utility services then in the alley. The contract in suit was a result of that requirement.

The contract was entered into on May 24, 1966. After recitation of the above facts, the contract required defendant to build an underground tunnel to house the utility lines of the plaintiff and the Omaha Public Power District, according to specifications attached to the contract. The contract provided that the costs of the moving of the utilities in the tunnel would be borne by the defendant, and that the defendant ". . . agrees to and does hereby indemnify the . . . Telephone Company against all damages to their utility facilities located in the alley, . . . and for liability to the customers . . . for refunds or for interruption of service, caused by Woodmen's excavation and construction activities and by

the acts and omissions of Woodmen's architects or contractors."

The defendant started construction of its building and the plaintiff moved its telephone lines to an uncompleted tunnel. On May 7, 1968, while the construction activities of the defendant were in progress, a fire started in the tunnel damaging and destroying a number of cables carrying local and distance call lines of the plaintiff. The plaintiff made emergency repairs to the cables, and was required to make refunds to customers who were denied the use of the facilities for periods ranging from 24 to 36 hours. Ultimately the tunnel was completed to specifications.

At the date of the fire the construction site was under the control and occupied by the defendant and its architects and contractors. The fire was extensively investigated and the probable cause as testified to by the investigators was a spark from a cutting torch which dropped through openings at the top of the tunnel or the dropping of a lighted cigarette or cigar at the point of the fire. The evidence disclosed no other possible cause or causes. At the conclusion of the evidence, the court directed a verdict of liability on the indemnity portion of the contract and submitted to the jury the issue of a breach of the agreement to construct a tunnel. The jury returned a verdict of $74,544.74 on all causes of action.

The plaintiff asserts seven assignments of error, but simply stated, they involve three issues: (1) The court should have directed a verdict and entered judgment for the amount the plaintiff's evidence proved as repairs and refunds; (2) the court should have directed a verdict on the alleged failure of defendant to protect the plaintiff's facilities and its failure to construct an enclosed tunnel; and (3) the court should have allowed interest from the date of the presentation of the repair statement on June 29, 1969.

The Federal Communications Commission is given

the authority to prescribe a uniform system of accounting for telephone companies, including the disbursements and receipts of money. 47 U. S. C. A., § 220, p. 122. The plaintiff cites a number of cases dealing with the validity of the regulations adopted, but the same are not in point here.

The plaintiff's evidence of the damages on behalf of itself and A. T. & T., an associated company, generally was that of the accounting personnel. The various witnesses testified in detail as to methods of allocation of direct cost, its method of determining allocation of overhead, vehicle expense, pension and other costs, and the amount of refunds. The plaintiff introduced evidence that the bookkeeping procedures were those specified and required by the Federal Communications Commission. Under the formula the plaintiff offered evidence tending to show damages in the amount of $100,225.83. The evidence as to amount was not substantially controverted.

The trial court instructed the jury after directing a verdict on the indemnity contract, that in considering the amount of the plaintiff's damages, the jury "may consider" certain elements of damages, to-wit, "the fair and reasonable costs of labor and material plus a reasonable overhead," and credit and refunds to customers.

The court further instructed the jury that it "may consider" records kept according to a method required by the Federal Communications Commission as a proper measure of plaintiff's damage, and further the jury was not bound by a bookkeeping system of the plaintiff.

Wisconsin Telephone Co. v. Reynolds, 2 Wis. 2d 649, 87 N. W. 2d 285, is cited as authority for the proposition that in an action by a telephone company against a grading contractor for damage to an underground cable, the company's accounting records relating to cost of repair, which records were in the form prescribed by the Federal Communications Commission, indicated actual cost of the repair.

Baltimore & Ohio R. R. Co. v. Commercial Transport, Inc., 273 F. 2d 447, held that a jury could compute damages for repair overhead on the basis of a formula utilized by railroads in charging one another for repairs.

The cases merely hold that a verdict may be based on costs determined by uniform accounting practices. No authority has been cited for the proposition that a trier of fact is conclusively bound by such a system. The assignment is without merit.

All parties agree that the defendant did complete the tunnel according to the specifications, although the evidence established that at the time of the fire the tunnel was not complete. The trial court properly submitted to the jury the issue of whether the activities of the defendant and its contractors constituted a breach of the agreement to "protect" the facilities of the plaintiff.

The jury found for the plaintiff and incorporated such award as it may have found in the single verdict. We find no error.

With regard to the plaintiff's claim for prejudgment interest, the rule is: "Recovery of interest on an unliquidated claim, the subject of reasonable controversy and incapable of being fixed by computation, may be had only from the date of determination of the right of recovery and the ascertainment of the amount." Inland Drilling Co. v. Davis Oil Co., 183 Neb. 116, 158 N. W. 2d 536.

The petition prayed for damages to the plaintiff and a related company of $217,989.56. The amount of damages was disputed and proof was dependent on witnesses' opinion of the reasonable value of material, labor, use of equipment, and overhead expenses. The claim, to be liquidated, must be based on evidence which, if believed, makes it possible to compute the amount without reliance upon opinion or discretion. Abbott v. Abbott, 188 Neb. 61, 195 N. W. 2d 204. It cannot be said that the claim, under this standard, was in any sense determined or liquidated. The trial court

was correct in denying prejudgment interest.

The defendant cross-appeals assigning 15 alleged errors by the trial court. We discuss only the pertinent assignments. The first refers to the trial court's refusal to allow the defendant leave to file a third party complaint. The third parties sought to be joined were Woodmen's architect, contractor, and the contractor's surety company.

Granting of leave to file a third party complaint is entirely within the discretion of the trial court. § 25-331, R. S. Supp., 1969. No showing of prejudice is made, nor is the defendant prevented from litigating in an appropriate form the possible liability of its contractor or architects. The result of joinder would be to further complicate an already complicated factual and legal controversy. We find no abuse of discretion.

Defendant assigns as error the trial court's allowing the claim of A. T. & T. to be included in the claim of plaintiff. The contention is without merit. The contract recites that the contract was made on behalf of the plaintiff "and associated companies." There is no dispute that A. T. & T. is an associated company of plaintiff, that it had lines belonging to it in the alley before and after movement to the tunnel, and that its lines were damaged. The defendant's arguments as to the extent of the indemnity are not persuasive, the indemnity obviously extended to those associated companies of plaintiff who had lines in the alley and which the contract required the plaintiff to protect.

The third assignment of error relates to the trial court's action in directing a verdict for plaintiff on the issue of liability on the first cause of action. The plaintiff offered proof of construction activities of the defendant's contractors sufficient to account for the cause of the fire in a building site solely under the control of the defendant and its contractors, and the defendant offered no evidence as to any other conceivable cause. Whether in any circumstance it would be required that

the plaintiff prove negligence in a contract of indemnity is not reached. The only evidence before the court sustains the proposition that the fire was caused by some act or activities of the defendant or its contractors. The defendant's contention is without merit.

Other assignments of error argued by the defendant are without merit. The judgment of the trial court is affirmed.

AFFIRMED.