BANK OF VALLEY, A CORPORATION, APPELLEE, V.
DUANE C. SHUNK, APPELLANT.

302 N.W.2d 711

Filed March 6, 1981. No. 43160.

David J. Lanphier of McGill, Koley, Parsonage & Lanphier, P.C., for appellant.

Richard J. Butler of Ginsburg, Rosenberg, Ginsburg, Cathcart, Curry & Gordon for appellee.

Heard before BOSLAUGH, MCCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

McCown, J.

The plaintiff bank brought an action against the defendant to recover principal and interest due on a promissory note. Defendant answered and also counterclaimed, alleging fraud and requesting reformation. After the taking and filing of depositions the District Court sustained plaintiff's motion for summary judgment and entered judgment against the defendant in the sum of $25,000 plus interest and costs. The defendant's counterclaim was dismissed. Defendant has appealed.

During the times relevant here Peter L. Heintzelman was the president of the plaintiff, Bank of Valley, Nebraska, and in charge of the entire operations of the bank. He was also a director of the bank and had held both positions for several years. In 1976 Heintzelman's mother died and he was appointed as a coexecutor of the estate. Acting as president of the bank and as executor of the estate, Heintzelman made loans to the estate on several occasions, and at sometime prior to November 1976 the total amount of such loans to the estate was approximately $73,000. The bank's legal loan limit to any one borrower was $75,000. On November 16, 1976, Heintzelman made an additional loan to the estate of $50,000 which made a total indebtedness of the estate to the bank of $123,000. A large portion of the proceeds of the loans to the estate were used by Heintzelman for his own personal purposes. In addition to the estate loans Heintzelman was personally indebted to the bank on his own notes in the sum of $40,000. He was also personally indebted to six other banks, five of which had common ownership with the Bank of Valley, in the sum of $140,000.

Robert Pease, vice president and director of the bank, knew that the $50,000 loan to the Heintzelman estate of November 16 exceeded the legal lending limits of the bank. At the annual meeting of the board of directors in January 1977 the board of directors

was advised of the $50,000 loan, and the matter of the loans to the estate was discussed at the board meeting. Heintzelman assured the board of directors that the amount of the bank loans to the estate would very shortly be reduced below the legal lending limit, and the $50,000 loan was approved by the board.

Shortly after the January 1977 board meeting Heintzelman contacted the defendant Shunk and inquired if he knew of anyone that would be willing to make a loan to Heintzelman. The defendant was a commercial loan customer of the bank, a favored borrower who had obtained previous loans from the bank through Heintzelman. The defendant asserts that their previous relationships had been purely on a business basis, while Heintzelman asserts that he and the defendant were good friends. Sometime later when Heintzelman again inquired of Shunk, he was advised that Don Rogert, Wilmer Mattson, and the defendant might consider the matter but needed to know more about it. Heintzelman then informed the defendant that he needed $75,000 because he was involved in the commodities market on the board of trade and that his mother's estate was not being settled as rapidly as he had anticipated and that he was having troubles with it. The defendant told Heintzelman that the three men did not have cash on hand to make any loan to Heintzelman, but that if the bank would loan them the money they would loan it to Heintzelman. Heintzelman told Shunk that the bank would be willing to make the loans to the three individuals, and that Heintzelman would give each of them his personal note in the same amount and on the same terms. The evidence is in conflict as to what representations were made by Heintzelman to the defendant to induce him and the others to sign the notes to the bank. The defendant asserts that Heintzelman told him that the $75,000 would be sufficient to clear up Heintzelman's financial difficulties; that the assets of his mother's estate would be

sufficient to secure and repay the notes; and that the three individuals would only have to pay on their notes to the bank whatever amounts Heintzelman paid on his notes to them, and that their notes to the bank would be renewed in the same fashion as any renewal of Heintzelman's notes to them.

Heintzelman denied that he had agreed that the notes of the three individuals would be extended as long as it took Heintzelman to repay them, but conceded that he had assured the defendant that the notes would be renewed if necessary on the same basis as the notes of any other preferred loan customer of the bank. Heintzelman denied that he had mentioned any collateral and denied that defendant's obligation to pay the note to the bank was tied to or connected with Heintzelman's ability to repay his note to defendant.

On February 22, 1977, the defendant Shunk and Rogert met Heintzelman at the bank. Mattson was unable to be present that day. Since Heintzelman wanted the full $75,000 at that time, Rogert signed a note to the bank for $50,000 as president of Lake Aero, Inc., and defendant signed a note to the bank for $25,000. That note is the one involved in this case. The $50,000 for Rogert's note was deposited directly into the personal checking account of Heintzelman. The $25,000 for the defendant's note was put in defendant's checking account, and the defendant wrote a personal check to Heintzelman for $25,000 which was placed in Heintzelman's personal checking account. The defendant and Rogert received notes signed by Heintzelman for $25,000 and $50,000, respectively, which had the same 1-year maturity and 8½ percent interest rates as their notes to the bank. Heintzelman wrote a check on his personal account later and paid the bank $61,000 on principal, plus accumulated interest, and credited the payment on the bank's loans to his mother's estate. Neither Shunk nor Rogert knew that the bank had loaned Heintzelman sums in excess of the bank's legal loan limit nor that any part

of the $75,000 was to be used to reduce Heintzelman's indebtedness to the bank.

The following day, February 23, 1977, Mattson went to the bank. He signed a note to the bank for $25,000, the proceeds of which were deposited in his account. Mattson then wrote a check for $25,000 on his account, leaving the payee blank and delivered the check to Heintzelman to be applied to the $50,000 Lake Aero, Inc., loan so that the defendant, Rogert, and Mattson would each have borrowed and loaned $25,000.

The vice president of the bank reported the transactions outlined above to the individual who controlled 81 percent of the bank stock but was not a director. That individual demanded Heintzelman's resignation and Heintzelman resigned as president of the bank on February 25, 1977.

In May 1978 the Bank of Valley commenced this proceeding against the defendant to recover $25,000 plus interest on his promissory note dated February 22, 1977. The defendant's answer admitted the execution of the note but denied that the note was payable under the terms and conditions set forth in the note, and alleged that any liability of the defendant to the bank had been satisfied pursuant to the facts alleged in defendant's counterclaim. The defendant also alleged that the bank was estopped from asserting liability on the note and alleged fraud arising out of the facts alleged in the defendant's counterclaim.

Defendant's counterclaim alleged that Heintzelman, as president of the bank, had made false representations to the defendant with respect to the use of the proceeds of the bank loan and the collateral therefor, and had concealed and misrepresented material facts which constituted fraudulent inducements to the defendant to execute the note to the bank and to deliver the proceeds of the note to Heintzelman. The counterclaim alleged that the bank held all available collateral as security for loans of the bank to Heintzel-

man, and had received and utilized all such collateral and received full payment on all the bank's loans to Heintzelman. It was also alleged that because of the application of that collateral, Heintzelman would never be able to pay to defendant any indebtedness represented by Heintzelman's note to defendant. The counterclaim also alleged that if the defendant were forced to pay his note to the bank, the bank would be profiting from its own wrongdoing through the acts of its president, Heintzelman. Defendant prayed for judgment reforming the provisions of the defendant's note to the bank and Heintzelman's note to the defendant to provide that defendant has no liability for payment of his note to the bank and directing that the note of Heintzelman to defendant be reformed or endorsed so that Heintzelman's indebtedness on that note would be owed directly to the bank.

The District Court sustained the plaintiff bank's motion for summary judgment, entered judgment against the defendant for $25,000 plus interest from February 22, 1977, and dismissed defendant's counterclaim.

On appeal to this court the defendant contends that the trial court erred in sustaining plaintiff's motion for summary judgment and in dismissing defendant's counterclaim because there were several genuine issues of material fact which were in dispute. The defendant also contends that the trial court erred in entering orders limiting the defendant's discovery, and also erred in overruling defendant's motion for leave to file a third-party petition against the board of directors of the bank.

This court has consistently held that the moving party is not entitled to summary judgment except where there exists no genuine issue as to any material fact and where, under the facts, he is entitled to judgment as a matter of law. Neb. Rev. Stat. § 25-1332 (Reissue 1979).

Summary judgment is an extreme remedy and

should be awarded only when the issue is clear beyond all doubt. Any reasonable doubt touching the existence of a material issue of fact must be resolved against the moving party. *Clemens Mobile Homes, Inc. v. Guerdon Industries, Inc.*, 199 Neb. 555, 260 N.W.2d 310 (1977).

Upon a motion for summary judgment the court examines the evidence not to decide any issue of fact but to discover if any real issue of fact exists. In this respect the court should take that view of the evidence most favorable to the party against whom the motion is directed, giving to that party the benefit of all favorable inferences which may reasonably be drawn from the evidence. If, when so viewed, reasonable men might reach different conclusions, the motion should be denied and the case tried on its merits. *Farro v. Rubottom*, 202 Neb. 120, 274 N.W.2d 149 (1979).

On the record here there are apparent factual disputes as to whether Heintzelman had made fraudulent representations or engaged in fraudulent conduct and, if so, in what capacity. There are also issues of fact as to whether the various transactions were separate and distinct transactions or part of a single plan or scheme, and issues of fact as to whether the transactions were undertaken for the benefit of the bank or only for the personal benefit of Heintzelman. Under such circumstances, summary judgment was inappropriate, both with respect to the principal cause of action as well as to the designated counterclaim which alleged a possible defense to the note.

The defendant also contends that the District Court erred in denying defendant's motion to require plaintiff to produce various documents relating to the bank's dealings with and loans to Heintzelman, including the timing and scope of those dealings, and correspondence and documents submitted by the bank to the State Department of Banking in connection with excess limit loans to Heintzelman or the Heintzelman estate.

Generally, discovery should be allowed regarding any nonprivileged matter which is relevant to the subject matter involved in the pending action. See Neb. Rev. Stat. §§ 125-1267.01 et seq. (Reissue 1979). Ordinarily, the purpose and intent of discovery statutes is to leave their application to the sound discretion of the trial court. See *Haarhues v. Gordon*, 180 Neb. 189, 141 N.W.2d 856 (1966). Where the information sought is relevant it may be at least premature for the trial court to limit a party's discovery and then grant an opposing party's motion for summary judgment. Where issues of fraud are pleaded and the facts sought to be discovered may be directly relevant and material, discovery should ordinarily be permitted.

Defendant also complains that the District Court overruled defendant's application to file a third-party complaint against the individual directors of the plaintiff bank. The granting of leave to file a third-party complaint is a matter entirely within the discretion of the trial court. *Northwestern Bell Tel. Co. v. Woodmen of the World Life Ins. Soc.*, 189 Neb. 30, 199 N.W.2d 729 (1972). In the case at bar, no showing of prejudice is made nor is the defendant prevented from litigating in an appropriate forum the possible liability of the bank's directors. We find no abuse of discretion.

The judgment of the District Court is reversed and the cause is remanded to the District Court for further proceedings in accordance with this opinion.

REVERSED AND REMANDED.

KRIVOSHA, C.J., not participating.

CLINTON, J., dissenting.

I respectfully dissent from the majority opinion.

The evidence before the court on the motion for summary judgment shows without any contradiction that the defendant Shunk was not in any way deceived when he borrowed money from the bank on the note in suit and in turn loaned the money to Heintzelman,

taking Heintzelman's note in consideration of the loan to himself. The evidence shows that he knowingly made a personal loan to Heintzelman because Heintzelman was in financial difficulty. Shunk himself suggested that he would make the personal loan which Heintzelman had requested, if the bank would lend the money. The evidence shows, also without contradiction, that Shunk knew from Heintzelman himself that the latter was in financial difficulty. In fact, Shunk's counterclaim alleges: that he (Shunk) was informed by Heintzelman that the latter needed "$75,000.00 to clear up his difficulties with an estate, with Bank President's [Heintzelman] brother *and to clear up debts at bank.*" (Emphasis supplied.) The pleadings contain no allegation that Shunk relied upon any representation by Heintzelman that the latter's indebtedness to the bank was within lawful loan limits.

The evidence shows that whatever representations Heintzelman made, he was making them on his own behalf. It further shows that Shunk was relying upon Heintzelman to pay him and not upon the bank. The only allegation in the counterclaim relative to Heintzelman's liability to the bank being in excess of loan limits is simply that this fact was unknown to Shunk.

There is no evidence in the record which tends to show that Heintzelman, in requesting the loans to himself, was acting on behalf of the bank and in the course and authority of his employment with the bank.

A bank officer, in negotiating a loan from a third party on his own behalf, is not acting within the scope of his authority as a bank officer and his acts do not bind the bank. *Farmers Nat. Bank v. Ohman,* 112 Neb. 491, 199 N.W. 802 (1924); *Cozad State Bank v. McLaughlin,* 128 Neb. 87, 258 N.W. 36 (1934); *Schwenker v. Teasdale,* 206 Wis. 275, 239 N.W. 434 (1931). There is no evidence that Heintzelman was acting on behalf of the bank in arranging his personal loan so that he could pay the bank.

The defect in the majority opinion is that it does not analyze the pleadings in terms of the essential element of fraud, nor the evidence submitted in connection with the motion for summary judgment to determine whether there are any *material facts in dispute* on the issue of the alleged fraud of the bank; rather, it assumes the materiality.

Shunk also complains that the court erred in limiting discovery by sustaining objections to certain interrogatories. An examination of the interrogatories to which objection was sustained indicates that they are not relevant or material to the proof of any issue in the case, or likely to lead to any such evidence.

I would affirm the judgment of the trial court.